IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRANDON McCROSKEY, et al : **CASE NO. 1:01cv429**

    Plaintiffs : (Judge Spiegel)

-vs- :

BUTLER COUNTY SHERIFF'S OFFICE : **MOTION FOR SUMMARY JUDGMENT OF DEFENDANT BUTLER COUNTY SHERIFF'S OFFICE**

    Defendant :

::: ::: ::: :::

Now comes defendant Butler County Sheriff's Office, by and through counsel, and pursuant to Civil Rule 56 of the Federal Rules of Civil Procedure, hereby moves this Court for an entry of summary judgment in its favor, and against plaintiffs on the grounds that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. The bases of this Motion are the depositions of the plaintiffs as well as the depositions of Daniel Allen Berter, Jeffrey David Duke, Anthony Dwyer, Richard K. Jones, Christopher Paproski, Marc Dennett, Jeff Sandlin and the law as set forth in the attached memorandum.

s/ Jack C. McGowan
Jack C. McGowan  Bar Number: 0005619
JACK C. McGOWAN & ASSOCIATES
Attorney for Defendant
246 High Street
Hamilton, Ohio 45011
(513)844-2000/Fax(513)868-1190
E-mail: JCM@jcmcgowan.com

**MEMORANDUM**

I. **BACKGROUND**

Plaintiffs Brandon McCroskey and Toby Andrews were members of the Butler County Sheriff's Explorers Post 916. (D.Berter Depo., p. 43 & Exh. 19) Exploring is a program for career education sponsored by the Boy Scouts of America and is designed to provide exposure to various jobs and professions to young men ages 14-21. (Andrews Depo., p. 22) Pursuant to written agreement, participating organizations agree to provide members a meeting locale and instruction related to the sponsor's field of expertise. Defendant Butler County Sheriff's Office (hereinafter "BCSO") established Post 916 and participated in its activities through the relevant time period. (D.Berter Depo., p. 43 & Exh. 19) The Dan Beard Council's district officer would attend one or two meetings per year. (Id. at pp. 45-46; McCroskey Depo., p. 38)

Plaintiff McCroskey was a member of the Post from 1994 through 2002 (McCroskey Depo., p.39), while Andrews joined in 1999 and was still a member at the time of his deposition on December 31, 2002. (Andrews Depo., pp. 25-26)

Plaintiff McCroskey claims that he was the victim of sexual harassment and abuse by former Deputy Sheriff Dale Stewart who served as an Assistant Advisor to the Post. Stewart, who also worked for the Emergency Management Agency ("EMA") of Butler County and for Kings Island, had training and experience in radios and computers as well as communications in general. (D.Berter Depo., p. 33; Paproski Depo., pp. 14-15; McCroskey Depo., p. 97) He regularly

attended meetings of the Explorers where he would demonstrate such techniques as handcuffing, arm self-defense and safety precautions. (D.Berter Depo., p. 29) He and plaintiff McCroskey grew close, and Stewart disclosed his bisexuality early in their relationship. (McCroskey Depo., p. 80)

Over the course of 1995 or 1996 until June, 2000, Stewart took liberties with plaintiff and touched plaintiff's genitals at various locales including another Explorer's house, while driving in an EMA vehicle, at the EMA office, and while riding in Stewart's cruiser. (McCroskey Depo., pp.135-136)

Plaintiff Andrews first met Stewart when he joined the Post in 1999. (Andrews Depo., p.21) Andrews developed an admiration for Stewart because of his depth of experience in police procedures and his achievements, including positions of importance which he held. (Id. at pp. 29-30) However, while riding in Stewart's cruiser on one occasion while responding to an emergency, Andrews was touched in a private area by Stewart who also made a sexual comment. (Id. at p. 41) Andrews began to doubt whether earlier personal comments of Stewart were merely joking as he had assumed. (Id. at pp. 57 & 90) Thereafter, Stewart told Andrews he was bisexual. (Id. at p. 62)

In June, 2000, Stewart made a comment to plaintiff Andrews, while at a Safety Camp sponsored by the American Red Cross, that the two of them might sleep together in Stewart's tent. (Andrews

Depo., p. 69) Andrews reported this event and Stewart's other behavior to Post Advisor Daniel Berter and Assistant Post Advisor Jeff Duke. (Id. at p. 69) Berter summoned the other Explorers attending the Camp to determine if anyone else had been abused and asked each one who responded positively to compose a written statement. (McCroskey Depo., p. 102) Berter left the Camp and personally reported the allegations against Stewart to his supervisor, whereupon Stewart was suspended. (D.Berter Depo., p. 40) The ensuing investigation produced a confession by Stewart (Dwyer Depo., pp. 34-36), who was later convicted and sentenced in State Court.

Plaintiffs filed a complaint against the Butler County Sheriff's Office (BCSO), only, for violation of their constitutional rights under the Fourteenth Amendment of the United States Constitution.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)(citing Fed.R.Civ.P. 56(c)).  See also, Lapointe v. UAW, Local 600, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of

-3-

the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of genuine issues of material fact.

Celotex, supra, 477 U.S. at 323 (citing Fed.R.Civ.P. 56(c)). If the non-moving party bears the burden of proof on a particular element or claim, the moving party satisfies its initial burden by pointing out to the court the absence of evidence to support the non-moving party's case. Hartsel v. Keys, F.3d 795, 799, (6th Cir. 1996), cert denied, 117 S.Ct. 683 (1997).

Once the moving party has satisfied its burden, the burden then shifts to the non-moving party. Fed.R.Civ.P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing there are genuine issues for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

As such, the non-moving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Kentucky Department of Transportation, 53 F.3d 146, 150 (6th Cir. 1995).

A court is obligated to afford all reasonable inferences and construe the evidence in a light most favorable to the non-moving party. Cox, 53 F.3d at 150. However, summary judgment should be granted if a party who bears the burden of proof at trial does not establish an element of his case. Tolton v. American Biodyne,

-4-

Inc., 48 F.3d 937, 941 (6th Cir. 1995). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient to avoid summary judgment. Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995)

### III. LAW and ARGUMENT

A local governmental entity may be held liable under 42 U.S.C. §§ 1983 for violations of federal law committed pursuant to a governmental "policy or custom." See Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978).

In order for plaintiffs to prevail on their §§ 1983 claim against the BCSO, they must establish that the BCSO official policy or custom caused the alleged constitutional violation. See Monell, 436 U.S. at 694.

A plaintiff can bring a claim under section 1983 when he is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. §§ 1983. A municipal liability claim against a sheriff's department must be examined by applying a two-pronged inquiry:

> (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and
> (2) Whether the Sheriff's Department is responsible for that violation.

See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).

Assuming for purposes of argument that sexual abuse by Stewart was a constitutional violation, one must consider whether the

defendant is responsible for that violation. Plaintiffs cannot base their claim against the BCSO solely on Stewart's conduct, for respondeat superior is not available as a theory of recovery under section 1983. Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). Rather, they must show that the BCSO itself is the wrongdoer. Collins, 503 U.S. at 122. Under Monell, the BCSO cannot be found liable unless plaintiffs can establish that an officially executed policy, or the toleration of a custom within the Sheriff's Department leads to, causes, or results in the deprivation of a constitutionally protected right. Monell, 436 U.S. at 690-91.

Plaintiffs do not assert that their sexual abuse resulted from an officially enacted policy. BCSO is a law enforcement arm of the State. Thus, it would not have enacted a policy to tolerate sexual abuse of children.

A "custom" for purposes of Monell liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." Monell, 436 U.S. at 691 (internal quotation marks and citation omitted); see also Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir.), cert. denied, 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." Nashville, Chattanooga & St. Louis Ry. Co. v. Browning, 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately

chosen from among various alternatives. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. <u>Feliciano</u>, 988 F.2d at 655.

In addition to showing that the BCSO as an entity "caused" the constitutional violation, plaintiffs must also show a direct causal link between the custom and the constitutional deprivation; that is, they must "'show that the particular injury was incurred because of the execution of that policy.'" <u>Garner v. Memphis Police Dept.</u>, 8 F.3d 358, 364 (6th Cir. 1993) (emphasis added) (citation omitted), cert. denied, 114 S. Ct. 1219 (1994). This requirement is necessary to avoid de facto respondeat superior liability explicitly prohibited by <u>Monell</u>.

Plaintiffs claim that BCSO failed to act to prevent sexual abuse.

To state a municipal liability claim under an "inaction" theory, plaintiffs must establish:

(1) the existence of a clear and persistent pattern of sexual abuse by Department employees;
(2) notice or constructive notice on the part of the Department;
(3) the Department's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
(4) that the Department's custom was the "moving force" or direct causal link in the constitutional deprivation.

-7-

See City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); see also Thelma D. v. Board of Educ. of City of St. Louis, 934 F.2d 929, 932-33 (8th Cir. 1991). The Monell custom requirement is an essential element of this claim. The evidence must show that the need to act is so obvious that the Department's "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to plaintiffs' constitutional rights. City of Canton, 489 U.S. at 389. "Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse.

The evidence in this case falls far short of indifference. Specific examples of testimony of witnesses will demonstrate the lack of notice, either actual or constructive, that abuse was occurring.

Deputy Sheriff Daniel Berter testified that he was present for virtually all the meetings. (D.Berter Depo., p. 28) Neither during Stewart's contact with Explorers or in other pursuits did Berter witness sexual misconduct or comments. (Id. at pp. 29-30) At one point, Berter was asked to keep an eye on Stewart because of excessive time he was spending with certain Explorers. (Id. at ) Berter was not indifferent to the request; he discussed it with the other Advisors to the Post, and some of the Explorers overheard his request to watch Stewart, including McCroskey. (Id. at pp.34-35;

McCroskey Depo., pp. 59 & 63) None of the other Advisors ever reported anything unusual (D.Berter Depo., p. 51), and Berter did not observe anything. (<u>Id.</u> at p. 50)

Jeffrey David Duke testified that he was an Explorer in the Post from 1993-1998 and became an Assistant Advisor after going through the police officer academy training. (Duke Depo., p. 24) He knew Stewart throughout these time periods. (<u>Id.</u> at p. 23) He experienced no inappropriate comments or physical advances. (<u>Id.</u> at pp. 29-31) To the point that no procedures for reporting sexual misconduct were established, he verified that the Explorers could talk to Advisors at anytime. (<u>Id.</u> at p. 39)

Major Anthony Dwyer testified he had known Stewart for a number of years, but was not aware of his sexual orientation or that he had made inappropriate comments. (Dwyer Depo., pp. 39-41) Chief Deputy Jones echoed these statements. (Jones Depo., pp. 52-56)

Christopher Paproski, active for six years as an Explorer, never saw Stewart inappropriately comment, touch another or himself. (Paproski Depo., pp. 15 & 67) Although all the Explorers were good friends, when he learned that Stewart had abused McCroskey, he was surprised. (<u>Id.</u> at p 39)

Marc Dennett is current Captain of the Post with over four years experience. (Dennett Depo., p. 10) He does not believe Berter knew anything he should have acted upon. (<u>Id.</u> at p. 38) Dennett,

-9-

though physically abused by Stewart once, did not report it. (<u>Id.</u> at p. 24)

The first persons Brandon McCroskey told about Stewart's abuse were Berter and Duke in the summer of 2000. (McCroskey Depo., p. 36. It was common knowledge among the Explorers that Stewart's comments would be inappropriate if he weren't joking and kidding around. (<u>Id.</u> at p. 155)

Toby Andrews became concerned enough about some of Stewart's comments to discuss them with McCroskey, but he did not tell Berter until Stewart's arrest. (Andrews, p. 35) Andrews first expression of concern to either Berter or Duke was at Safety Camp (<u>Id.</u> at p. 69), and they seemed somewhat shocked. (<u>Id.</u> at p. 96)

Jeff Sandlin was a member of the Post from 1997 through 2002. (Sandlin Depo., p. 7) He knew Stewart had abused McCroskey, but did not tell Berter until the investigation started. (Sandlin Depo., pp. 14-15)

Numerous depositions have been taken, but the sum and substance is that no one reported sexual abuse to the BCSO. It is only in hindsight that comments which were either clearly thought to be jocular at the time or possibly veiled, now seem to refer to Stewart's own sexuality. Yet, none of the comments, even taken collectively, would suggest child molestation tendencies by Stewart. Hence, plaintiffs cannot prevail on a claim of deliberate indifference.

-10-

Plaintiffs also claim that BCSO had a special relationship which gives rise to an affirmative duty to ensure their safety and well-being.

In <u>Sargi v. Kent City Bd. of Educ.</u>, 70 F.3d 907 (6th Circuit 1995), the Court considered the "special relationship" concept. The argument that compulsory attendance laws compelling minors to be in school creates a "special relationship" between a school district and its students was rejected. It was held that despite a common law duty to create and maintain a safe environment, neither the school district's in loco parentis status or a state's compulsory attendance laws sufficiently "restrain" students such that a constitutional duty is created.

In the case at bar, membership in the Explorers is totally voluntary. No law compels attendance at its meetings. Both McCroskey and Andrews knew they could stop attending at any time, yet considered the pluses to outweigh the minuses. (McCroskey Depo., p. 89; Andrews Depo., p. 147) Lacking a sufficient showing of restraint, plaintiffs' argument that a special relationship was created should likewise be rejected. The Due Process Clause does not impose absolute constitutional liability on a state. <u>Doe v. Clairborne Co.</u>, 103 F.3d 495 (6th Cir. 1996).

### STATE CLAIMS

Plaintiffs have asked the Court to assume jurisdiction of "pendant state law claims pursuant to 28 U.S.C. § 1367." If the

Court chooses to do so, such claims should be dismissed based upon the immunity of BCSO under Chapter 2744 of the Ohio Revised Code. Plaintiffs concede that BCSO is a political subdivision in paragraph 7 of the Complaint. The provision of police services and enforcement of laws is a governmental function as set forth in R.C. 2744.01(C)(1) and (2).

R.C. Chapter 2744 sets forth a three-tiered analysis to determine whether a political subdivision is immune from liability. First, R.C. 2744.01(A) sets forth the general rule that political subdivisions are not liable in damages for the death or injuries of a person. Second, a political subdivision may be stripped of its immunity if it falls into one of the five exceptions set for in R.C. 2744.02(B). Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. Finally, if immunity is removed at the second tier of analysis, immunity may be reinstated if one of the defenses listed in R.C. 2744.03 applies. The defenses in R.C. 2744.03 do not come into play unless liability attaches under one of the exceptions in R.C. 2744.02(B). Id. Hence, plaintiffs have not pled any of these exceptions, and it is submitted that none are applicable.

## IV. CONCLUSION

Based on the foregoing, defendant Butler County Sheriff's Office respectively requests that this Court grant its Motion for Summary Judgment as it has shown that there are no genuine issues

of material fact with respect to any of the foregoing defenses and that it is entitled to summary judgment as a matter of law. Accordingly, defendant respectively requests this Court to dismiss all claims against it, with prejudice and costs to be charged to plaintiffs.

Respectfully Submitted,

s/ Jack C. McGowan
Jack C. McGowan  Bar Number: 0005619
JACK C. McGOWAN & ASSOCIATES
Attorney for Defendant
246 High Street
Hamilton, Ohio 45011
(513)844-2000/Fax(513)868-1190
E-mail: JCM@jcmcgowan.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5TH day of November, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Marc D. Mezibov, Esq. at 920 Fourth & Race Tower, 105 W. Fourth Street, Cincinnati, Ohio 45202.

s/ Jack C. McGowan
Jack C. McGowan  Bar Number: 0005619
JACK C. McGOWAN & ASSOCIATES
Attorney for Defendant
246 High Street
Hamilton, Ohio 45011
(513)844-2000/Fax(513)868-1190
E-mail: JCM@jcmcgowan.com