59 Fed.Appx. 786                                                                                                                Page 1
**(Cite as: 59 Fed.Appx. 786, 2003 WL 1134499 (6th Cir.(Ohio)))**

H
This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Phyllis MAY, Administrator of the Estate of Deborah Kirk, deceased, Plaintiff-Appellee,
v.
FRANKLIN COUNTY BOARD OF COMMISSIONERS, et al., Defendants,
David Ratliff, Defendant-Appellant.

No. 01-4000.
March 12, 2003.

Administrator of murder victim's estate sued police officer in state court, alleging officer violated victim's substantive due process rights in failing to make force entry in response to domestic violence call. Action was removed to federal court. Officer moved to dismiss based upon qualified immunity. The United States District Court for the Southern District of Ohio, John D. Holschuh, J., denied motion. Officer appealed. The Court of Appeals, Cohn, District Judge, sitting by designation, held that: (1) no factual issues were in dispute that would preclude Court of Appeals from having jurisdiction over denial of motion to dismiss; (2) no custodial-type special relationship was created between county and victim when victim placed 911 call; (3) no special relationship was created by county's alleged displacement of other means of help through operating 911 system; (4) officer's acts, if proven, created special relationship by emboldening attacker; and (5) police officer's actions were not sufficiently culpable to establish liability, given lack of detail supplied by dispatchers.

Reversed.

Ryan, Circuit Judge, concurred and filed opinion.

West Headnotes

**[1] Federal Courts ⚖576.1**
170Bk576.1 Most Cited Cases

No factual issues were in dispute that would preclude Court of Appeals from having jurisdiction over denial of motion to dismiss substantive due process action against police officer on qualified immunity grounds, where officer did not accept that he was liable for harm to murder victim, but did admit his own relevant conduct which emboldened murderer, including his failure to make forced entry into victim's home. U.S.C.A. Const.Amend. 14; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Constitutional Law ⚖291.6**
92k291.6 Most Cited Cases

**[2] Counties ⚖148**
104k148 Most Cited Cases

No custodial-type special relationship was created between county and murder victim, as would support conclusion that county had affirmative duty under due process clause to protect victim, when victim placed 911 call reporting domestic violence; although victim hoped county would take charge of matter and protect her from harm, county did not take her into custody or do anything that affirmatively prevented her from protecting herself. U.S.C.A. Const.Amend. 14.

**[3] Constitutional Law ⚖291.6**
92k291.6 Most Cited Cases

**[3] Counties ⚖148**
104k148 Most Cited Cases

County's alleged displacement of other means of help through operating 911 system did not create special relationship between county and murder victim, as would support conclusion that county had affirmative duty under due process clause to protect

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

http://print.westlaw.com/delivery.html?dest=atp&dataid=A005580000004183000467844...

EXHIBIT
A

victim after she placed 911 call reporting domestic violence. U.S.C.A. Const.Amend. 14.

**[4] Constitutional Law** ⚖═▷253(1)
92k253(1) Most Cited Cases

**[4] Counties** ⚖═▷148
104k148 Most Cited Cases

Police officer's alleged acts of going to 911 caller's home, knocking, looking in window, and then leaving without making forced entry, while caller was being restrained inside by attacker, if proven, created special relationship, as required for county to be liable under due process clause for caller's subsequent murder, inasmuch as such alleged acts emboldened attacker. U.S.C.A. Const.Amend. 14.

**[5] Constitutional Law** ⚖═▷253(1)
92k253(1) Most Cited Cases

**[5] Municipal Corporations** ⚖═▷747(3)
268k747(3) Most Cited Cases

Police officer who allegedly went to 911 caller's home, knocked, looked in window, and left without making forced entry, while caller was being restrained inside by attacker, was not sufficiently culpable to be liable for caller's subsequent murder under substantive due process theory, inasmuch as officer's conduct, in light of fact that he had merely been told by dispatchers that call was "good domestic," did not shock the conscience. U.S.C.A. Const.Amend. 14.

*788 On Appeal from the United States District Court for the Southern District of Ohio.

Before MARTIN, Chief Circuit Judge; RYAN, Circuit Judge; and COHN, District Judge. [FN*]

> FN* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

COHN, District Judge.

**1 This action arises under 42 U.S.C. § 1983. Defendant-Appellant David Ratliff (Ratliff), a police officer for the Franklin Township Police Department in Ohio, filed this interlocutory appeal challenging the District Court's denial of his motion to dismiss Plaintiff-Appellee Phyllis May's (May) substantive due process claim on the basis of qualified immunity. May is the administrator of the estate of decedent Deborah Deborah Kirk (Kirk).

May claims that Ratliff violated Kirk's constitutional right to substantive due process when he responded to her 911 call for help in a domestic violence situation by going to her apartment, knocking, looking in the window, and then leaving without forcing entry; Kirk was restrained by an attacker in her apartment when Ratliff arrived, and she was murdered later that night. Ratliff argues first that May did not allege facts that state a constitutional violation under the substantive due process clause of the Fourteenth Amendment. Second, he argues that even if the facts and all reasonable inferences to be drawn from them do state a constitutional violation, the law delineating that violation was not clearly established on August 13, 1998, the date of the incident. Third, Ratliff argues that his conduct was objectively legally reasonable in light of the clearly established law at that time.

For the reasons that follow, we find that Ratliff in the circumstances of the case had qualified immunity, and therefore the district court's denial of the motion to dismiss the claim against Ratliff in his individual capacity is REVERSED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 13, 1998, Kirk called 911 three times from her Franklin County, Ohio, apartment. In these calls Kirk can be heard screaming and crying, and a male voice can be heard yelling. The second and third calls were terminated by some action in the apartment. Before the last call ended, Kirk yelled "leave me alone ... get out of here" and "you're not ripping my phone out ... get out of here." Franklin Township police officers including Ratliff, were dispatched to her residence after the second call but were not told that the call was a priority and were not told the contents of the call. Instead, the dispatchers merely told the officers it was a "good domestic." [FN1] Upon arrival at Kirk's apartment, the officers knocked on the apartment door, but no one answered. They also tried to look in the windows but could not see or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

hear anything. They attempted to get the phone number of the apartment to call inside, but they were unable to obtain it. Although the officers *789 did not know it, Kirk was alive inside her apartment and was being restrained by Marvin Moss (Moss), her ex-boyfriend. The officers then "cleared" the call and left.

> FN1. According to Ratliff's counsel at oral arguments, in police parlance a "good domestic" is a domestic violence situation.

The next day, Kirk's relatives, who were concerned because she had not reported to work, called the police, and Franklin Township police officers were again sent to Kirk's apartment. The police entered her apartment with the assistance of the building superintendent and found Kirk dead. She had been beaten to death by Moss.

**2 On August 10, 2000, May, Kirk's aunt and the administrator of her estate, filed a complaint in the Court of Common Pleas for Franklin County, Ohio. She sued Franklin County; the Franklin County, Ohio, Board of Commissioners; Kim Karnes, Franklin County Sheriff; Marino Antonio Susi, a Franklin County 911 dispatcher; Earl P. Taylor of the Franklin County Sheriff's Office; Franklin Township; Tim Guyton (Guyton), Cheryl Schack (Schack), and Ed Seeger (Seeger), individually and as the Board of Trustees of Franklin Township; Ratliff; and John Does # 1-10. She claimed substantive due process violations for deprivation of life and liberty; equal protection violations for giving domestic violence calls, in which women are over- represented, a lower priority than other calls; and other violations not relevant here. Defendants removed the complaint to the District Court for the Southern District of Ohio on September 14, 2000.

Defendants Guyton, Shack, Seeger, and Ratliff filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on October 11, 2000, based on qualified immunity in their individual capacities. On October 24, 2000, they filed a supplement to the motion to dismiss clarifying that they only claimed that Ratliff was entitled to qualified immunity.

On August 17, 2001, the District Court granted in part and denied in part the motion to dismiss. The Court found in relevant part that May stated a claim upon which relief could be granted by alleging facts that supported her claim against Ratliff for a substantive due process violation and that Ratliff had not established that he had qualified immunity. It is that decision that Ratliff now appeals.

## II. BASIS FOR APPELLATE JURISDICTION

The District Court exercised federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983, and it exercised supplemental jurisdiction over May's state-law claims under 28 U.S.C. § 1367. This court has jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine stated in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("a district court's denial of a claim of qualified immunity to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment"); *see also Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (*"Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at either the dismissal stage or the summary-judgment stage is a 'final' judgment subject to immediate appeal").

On September 12, 2001, Ratliff filed a notice of appeal regarding the District Court's denial of qualified immunity on May's substantive due process claim. On December 7, 2001, May filed a motion to dismiss the appeal based on a lack of subject matter jurisdiction, arguing that Ratliff's interlocutory appeal on the basis of qualified immunity was improper because questions of fact remain. On March 11, 2002, this court issued an order denying *790 May's motion to dismiss the appeal and directing the parties to address the jurisdictional issue in their briefs.

**3 [1] May argues that this court does not have appellate jurisdiction because there are factual issues in dispute. "[I]n order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir.2001) (internal citations omitted). Here May says that "[t]he particular fact which the Defendant-Appellant has yet to concede is that he is liable for the harm to Deborah Kirk because his actions rendered her more vulnerable to a private act of violence."

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Ratliff says he has conceded all of May's allegations of fact regarding his conduct, but he does not agree to the "conclusion of ultimate fact, or the mixed issue of law and fact," that Ratliff's actions amounted to a violation of May's substantive due process rights.

May's argument that there is not appellate jurisdiction is without merit. Ratliff admits all relevant conduct, i.e. that he went to Kirk's apartment, knocked on the door, looked in the windows, and then, after seeing and hearing nothing, left and cleared the call. Liability is a mixed question of law and fact, not a question of fact. *See Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999) (holding that psychiatrist's actions in a § 1983 case were issues of fact but that whether psychiatrist was "deliberately indifferent" was a mixed issue of law and fact or an issue of ultimate fact). A court need not accept as true legal conclusions framed as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ratliff need not accept that he is *liable* for the harm to Kirk on a Rule 12(b)(6) motion. Ratliff must concede, however, for purposes of this motion, the factual claim that his actions emboldened Moss. For these reasons we find jurisdiction is proper.

### III. ANALYSIS
#### A. Standard of Review

This court reviews a district court's ruling denying a motion to dismiss a substantive due process claim based on qualified immunity *de novo*. *Hardy v. Jefferson Community College*, 260 F.3d 671, 677 (6th Cir.2001). In a motion to dismiss, the court determines whether the plaintiff has alleged facts sufficient to state a claim. *Vemco Inc. v. Camardella*, 23 F.3d 129 (6th Cir.1994). "The motion will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Hardy*, 260 F.3d at 677. This court must accept "the facts alleged in the complaint as true and dra[w] all reasonable inferences therefrom in the plaintiff's favor." *Id.* Mixed questions of law and fact are reviewed *de novo*. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999).

#### B. Qualified Immunity

Ratliff argues that the claim against him in his individual capacity should be dismissed based on qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to determine whether May's Section 1983 claim against Ratliff should be dismissed for qualified immunity, we must undertake the following analysis: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established *791 must be considered." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

#### 1. Allegation of a Constitutional Violation

**4 May alleges that Ratliff violated Kirk's right of substantive due process under the Fourteenth Amendment of the Constitution, specifically the right to life and/or personal security. There is no dispute that Kirk suffered a deprivation of life and personal security: the question is whether May has alleged facts from which a reasonable jury could conclude that the deprivation can be ascribed to the acts of Ratliff.

The Due Process Clause of the Fourteenth Amendment prevents state actors from denying life, liberty, or property without due process of law, but it does not impose upon the state an affirmative duty to protect its citizens against private acts of violence. *DeShaney v. Winnebago Co. Dep't of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir.1998). State actors may be held liable for not protecting citizens from third parties, however, "where (1) the plaintiff and the state actors had a sufficiently direct relationship such that the defendants owed her a duty not to subject her to danger, and (2) the officers were sufficiently culpable to be liable under a substantive due process theory." *Sperle v. Mich. Dep't of Corrections*, 297 F.3d 483, 491 (6th Cir.2002) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 867, (6th Cir.1997), internal quotation marks omitted).

The first element, a "sufficiently direct relationship," is generally met by showing a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

"special relationship" exists between the state and the victim "through incarceration, institutionalization, or other similar restraints of personal liberty." *DeShaney*, 489 U.S. at 200. Although a restraint on personal liberty remains the clearest way to establish a duty to protect an individual, this court has clarified that the duty may also arise if the state creates a risk of harm to a citizen or renders that person more vulnerable to danger. *Sperle*, 297 F.3d at 491; see also *Jones v. Union County, Tennessee*, 296 F.3d 417, 428 (6th Cir.2002) (finding two exceptions to the general rule that the Due Process Clause does not create an affirmative duty to protect: the "special relationship" and the "state created danger" exceptions).

The Supreme Court explained in *DeShaney* that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitations which it has imposed on his freedom to act on his own behalf." 489 U.S. at 200. State actors thus must have custody of a person before owing a duty to protect or at least must have restrained the person in some way that hindered his ability to protect himself. *Id.* This court has found a special relationship in custodial settings but has generally rejected it in non-custodial settings. *See, e.g., id.; Davis v. Brady*, 143 F.3d 1021, 1026 (6th Cir.1998) (finding a special relationship based on police arrest of plaintiff and subsequent abandonment of him by the side of a dark and dangerous highway); *Stemler v. City of Florence*, 126 F.3d 856, 868 (6th Cir.1997) (finding a special relationship because police threats to arrest plaintiff if she did not get into the car of her obviously drunk and abusive boyfriend amounted to custody); *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir.1993) (finding no special relationship and denying liability where police abandoned the plaintiff children after arresting their mother but never took the children themselves into custody).

*792 **5 [2] May argues that a special relationship was created in this case when Kirk placed her 911 call. May says that call placed Kirk in the state's care just as if she had run to the nearest police station. Ratliff argues that there was no special relationship because there was no custodial restraint and no other restraint on Kirk's liberty or on her ability to protect herself.

Kirk was no more in the state's custody than was the plaintiff in *DeShaney*. In *DeShaney* the plaintiff, a four-year-old boy, was repeatedly beaten by his father and suffered permanent, severe brain damage as a result. *DeShaney v. Winnebago Co. Dep't of Social Services*, 489 U.S. 189, 193, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Department of Social Services (DSS) caseworker knew the plaintiff had been hospitalized three times with injuries that the hospital staff said indicated possible child abuse, she had a police report from the father's ex-wife saying that he was abusive to the child, and she saw suspicious injuries on the boy every time she visited. *Id.* at 192-93. She noted in her file that she suspected the boy was being abused, but neither she nor anyone else in DSS did anything about it. *Id.* at 193. Despite all the evidence accumulated by the DSS caseworker, her inaction in the face of that evidence, and the fact that the various people who reported their suspicions to DSS relied on it to solve the plaintiff's predicament, the Supreme Court denied all liability. *Id.* at 201. It found that "[w]hile the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.*

Kirk's calls to 911 are analogous to the reports to DSS of suspected child abuse: although the callers in both situations hoped the state would take charge of the matter and protect both individuals from harm, the state did not in fact take either one into custody or do anything that affirmatively prevented them from protecting themselves. There is no special relationship here based on a restraint of liberty.

The Supreme Court in *DeShaney*, however, also indicated that there might be liability even without a restraint on liberty if the state actor in some way created the danger. *Id.* at 201.

> In *DeShaney*, the Supreme Court went further and stated that a duty to protect can arise in a noncustodial setting if the state does anything to render an individual *more vulnerable* to danger. However, *DeShaney* does not specify what actions of a state would render a person more vulnerable to danger, nor how much more vulnerable to danger a state must make a person before the person's due process rights are violated.
> *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065

59 Fed.Appx. 786          Page 6
**(Cite as: 59 Fed.Appx. 786, 2003 WL 1134499 (6th Cir.(Ohio)))**

(6th Cir.1994) (emphasis in original). This court has explained and expanded this area left open by *DeShaney*. "Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998); *see also Davis v. Brady,* 143 F.3d 1021, 1025 (6th Cir.1998). In order to create a duty to protect, an officer's action would have to "increase the vulnerability of an individual to private acts of violence beyond the level it would have been ... absent state action." *Gazette,* 41 F.3d at 1065 (internal quotation marks and citation omitted).

**\*\*6** May argues that the facts pled in her complaint establish that Ratliff's conduct increased the risk that Kirk would be deprived of life and liberty in violation of the substantive due process clause. She first says that Ratliff's behavior--going to the **\*793** door, knocking, and then leaving--emboldened Moss because it diminished his fear of arrest. [FN2] Second, she says that the Township's operation of a 911 emergency response system has displaced other means by which victims of domestic violence protect themselves and that if Kirk had not relied on Ratliff, she might have called friends or family for help or found some other way to help herself. Ratliff says that he is not liable because all he did was fail to force entry into Kirk's apartment, which is an omission, not an affirmative act.

> FN2. This is a factual claim that May is prepared to support at trial with evidence. It will therefore be accepted as true for purposes of this motion.

According to the facts alleged, Ratliff's actions emboldened Moss and so increased Kirk's vulnerability to harm. She would have to prove at trial that these actions in fact emboldened Moss, but that is a question for a jury to decide. If May could show culpability, then she could proceed to a jury on that basis.

[3] May's second argument, that the 911 system displaced other means of help, was rejected in *DeShaney.* Justice Brennan argued unsuccessfully in dissent that the State's action in creating DSS and directing everyone to refer their concerns of child abuse to it did create a special relationship. *DeShaney v. Winnebago Co. Dep't of Social Services,* 489 U.S. 189, 205-08, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (Brennan, J., dissenting). He wrote that "[t]oday's opinion construes the Due Process Clause to permit a State to displace private sources of protection and then, at the critical moment, to shrug its shoulders and turn away from the harm that it has promised to try to prevent." *Id.* at 212 (Brennan, J., dissenting). May's claim of a special relationship is based on this very premise, that the police displaced private sources of protection by establishing and using the 911 system. Thus May has not made a case for a violation of a constitutional right due to a special relationship. *See also, Gazette v. City of Pontiac,* 41 F.3d 1061, 1063 (6th Cir.1994) (rejecting similar argument where police told plaintiff's decedent's daughter they were investigating decedent's disappearance when they were not doing so).

[4] May therefore has not alleged a constitutional violation based upon either a custodial-type setting or a situation in which the police displaced other means of help or protection. Under the facts alleged, however, she has sufficiently pled that Ratliff had a duty to protect her after emboldening Moss by going to her apartment, knocking, and then leaving.

[5] According to the facts alleged in the complaint, then, Ratliff had a duty to protect Kirk from Moss. Under the two-part test for alleging a constitutional violation, the next question this court must address is whether Ratliff was "sufficiently culpable to be liable under a substantive due process theory." *Sperle v. Mich. Dep't of Corrections,* 297 F.3d 483, 491 (6th Cir.2002).

**\*\*7** This obligation to protect persons from harm inflicted by third parties, however, does not automatically render state officials liable for the injuries that an individual suffers due to the actions of these private actors. Instead where such a duty exists, state actors are liable for breaching their obligation to the plaintiff only if they engaged in conduct that was so egregious that it can be said to be arbitrary in the constitutional sense. This standard necessarily lacks precise boundaries, but the Supreme Court has repeatedly instructed that the Fourteenth Amendment protects only against abuse of executive power which shocks the conscience. **\*794** *Id.* (internal quotation marks and citations

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

omitted). The "shocks the conscience" standard is also imprecise, but in a custodial setting "state actors will be held liable for violating a plaintiff's substantive due process rights if they exhibit deliberate indifference to the risk of injury from a private party." *Id.* at 491-92 (internal quotation marks and citations omitted). Not only must the state actor's behavior shock the conscience, but it must also consist of affirmative acts. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998); *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 913 (6th Cir.1995).

May says that Ratliff's arrival, minimal investigation, and subsequent departure were affirmative acts that emboldened Moss to hurt Kirk. Ratliff argues that May's real complaint is that he did not force entry into May's apartment and that his failure to do so was an act of omission and thus not actionable under Section 1983. May's factual claim that Ratliff's actions emboldened Moss must be accepted as true for purposes of a 12(b)(6) motion.

Although May's real complaint is the failure to do anything else--an act of omission, this Court will consider the question of whether the affirmative actions taken by Ratliff shock the conscience. They do not.

Ratliff arrived at Kirk's apartment, knocked on the door, looked in her windows, and left. Although that sequence of events might have emboldened Moss, it simply does not shock the conscience. Ratliff knew only that he was responding to a "good domestic." He did not know if there was anyone present in the apartment, and he did not have a warrant to enter. [FN3] It was not unreasonable for Ratliff to conclude that there was nothing likely happening in the apartment, that its occupants had left, and that a forced entry would be both unnecessary and unwelcome. His actions do not even indicate a deliberate indifference to Kirk's welfare, the standard that would be applied were this a custodial situation, where qualified immunity is less easily granted.

> FN3. We do not hold that he necessarily needed a warrant to enter in response to a 911 call for help; it is simply one factor that may reasonably have influenced his decision not to force entry.

If Ratliff had known what Kirk said to the 911 operator and the way in which the calls were terminated, this might be a different case, but there is nothing in the record to indicate that he had been told either the specific content or even their general nature. There is also nothing in the record to establish that Franklin Township had any standards setting out the appropriate response to a domestic violence 911 call. With the information available to Ratliff, his decision to investigate the call but not to force entry was reasonable. May therefore has not shown the requisite culpability on Ratliff's part to make out a violation of Kirk's constitutional rights.

### 2. Clearly Established Right

**\*\*8** Since May has not shown that Kirk's constitutional rights were violated by Ratliff, there is no need to address the second prong of the test whether or not the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### IV. CONCLUSION

For the foregoing reasons, Ratliff is entitled to qualified immunity, so the district court's order denying a dismissal of the substantive due process claim against him is REVERSED.


RYAN, Circuit Judge, concurring.

While I agree that officer Ratliff is entitled to qualified immunity, I write separately **\*795** because I disagree that May alleged "a sufficiently direct relationship such that [Ratliff] owed her a duty not to subject her to danger." *Stemler v. City of Florence,* 126 F.3d 856, 867 (6th Cir.1997).

Under the framework for the analysis of qualified immunity, we must first determine whether the plaintiff, May, has alleged facts demonstrating that her decedent Kirk's constitutional rights were violated. To do so, we make two additional inquiries: (1) whether Kirk and Ratliff had a sufficiently direct relationship; and (2) whether Ratliff was sufficiently culpable to be liable for a due process violation. *Id.* The majority concludes that May alleged a sufficiently direct relationship under the state-created-danger theory. The majority then holds that Ratliff was not sufficiently culpable

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

and that, ultimately, May did not allege a violation of a constitutional right. To me, that analysis is confusing and, on the facts of this case, mistaken. In my view, May did not allege the kind of direct relationship between Kirk and Ratliff--a state-created danger--to make out a due process claim.

As the majority notes, "[l]iability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). In *Kallstrom*, we explained this theory by borrowing an analogy from the Seventh Circuit: " '[I]f the state *puts* a man in a position of danger from private persons and then fails to protect him, ... it is as much an active tortfeasor as if it had thrown him into a snake pit.' " *Id.* (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982)) (emphasis added).

May alleged that Ratliff's actions--responding to the call, knocking on the door, and looking in the windows--"emboldened" Moss to kill Kirk. According to the majority, May alleged a state-created danger because Ratliff's actions "increase[d] the vulnerability of an individual to private acts of violence beyond the level it would have been ... absent state action." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir.1994) (internal quotation marks and citation omitted).

In *Gazette*, the police were called to investigate the abduction of Pamela Bandy, who disappeared from a car wash. *Id.* at 1063. The police told Bandy's daughter that they had investigated the car wash when, in fact, they had not. *Id.* Bandy's daughter argued that had the police investigated the car wash, they would have discovered evidence which would have led them to Bandy. *Id.* We held that the plaintiff could not show the requisite "special relationship" between Bandy and the officers. *Id.* at 1065. We concluded that "[a]t most, the ... police officers failed to rescue Bandy, and did not 'create the danger' in which she found herself." *Id.* As to the plaintiff's specific claim that the officers increased Bandy's "vulnerability to danger," we explained that "the Due Process clause does not guarantee any citizen the right to government aid, including a guarantee of rescue." *Id.* at 1066.

**9 Ratliff did not "create" the danger to Kirk. Nor did Ratliff "put" Kirk in danger, as explained in *Kallstrom*. Ratliff responded to the call and took measures to gain admittance. Based on the facts alleged, his conduct was in no way offensive to the constitutional guarantee of due process. The Constitution simply does not proscribe what he did. Concerning May's claim that Ratliff increased Kirk's vulnerability to danger, we point out, as we did in *Gazette*, that there is no constitutional "guarantee of rescue." Even if Ratliff "emboldened" Moss, Ratliff did not create *796 the danger; Moss did that. At most, Ratliff failed to rescue Kirk. At the very least, he did not violate the law by breaking down the door.

Because May does not allege a state-created danger, she cannot show a sufficiently direct relationship between Kirk and Ratliff. She does not, therefore, allege a constitutional violation.

For the foregoing reasons, but not those elucidated by my colleagues, I agree that Ratliff is entitled to qualified immunity and, therefore, the district court's judgment must be reversed.

59 Fed.Appx. 786, 2003 WL 1134499 (6th Cir.(Ohio))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works