# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **BRANDON MCCROSKEY, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CASE NO. C-1-01-429** |
| | : | |
| **v.** | : | **Judge Spiegel** |
| | : | |
| **BUTLER COUNTY SHERIFF'S OFFICE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

---

## AFFIDAVIT OF DR. THOMAS M. KELLEY

|  |  |
|---|---|
| | ) |
| STATE OF OHIO | ) S.S.: |
| | ) |

Dr. Thomas M. Kelley, after being duly cautioned and sworn upon his oath, states as follows:

1.  The attorneys for Mr. Brandon McCroskey and Mr. Toby Andrews requested my expert opinion in the above captioned matter.

2.  The attached report is my expert opinion based upon my review of the records related to the sexual victimization of Mr. McCroskey and Mr. Andrews.

3.  If called upon to do so, I could competently testify to the forgoing.

**EXHIBIT**

B

FURTHER AFFIANT SAYETH NAUGHT.

_____

DR. THOMAS M. KELLEY

Affiant

Sworn to and subscribed in my presence this 29th day of December 2003.

_____

**Thomas M. Kelley, Ph.D.**
**Licensed Psychologist**
**40700 Woodward Avenue, Suite 201**
**Bloomfield Hills, MI. 48304**
**(248) 644-4909**
**FAX: (248) 644-0237**

**TO:**     Michael Budelsky and Marc Mezibov
          Sirkin, Pinales, Mezibov, and Schwartz

**FROM:**   Thomas M. Kelley, Ph.D., Licensed Clinical Psychologist
          Associate Professor, Department of Criminal Justice
          Wayne State University

**RE:**     Brandon McCroskey and Toby Andrews v. Butler County Sheriff Office
          Case # C-1-01-429

**DATE:**   October 15, 2003

## Introduction

### Purpose of Report

Over a period of several years, Dale Stewart, a former Butler County Sheriff Deputy and advisor to the Butler County Sheriff Police Explorers Post, sexually harassed and sexually victimized several minor adolescent male explorers. Deputy Stewart was subsequently convicted for these criminal actions and is presently serving his sentence of incarceration. My professional opinion in this case has been requested by the attorneys of two of Deputy Stewart's victims, Mr. Brandon McCroskey and Mr. Toby Andrews. I have been asked to review the records related to the sexual victimization of these two young men by Deputy Dale Stewart, and to render my expert opinion regarding:

1.  The duty of the Butler County Sheriff Department to protect Toby Andrews and Brandon McCroskey from sexual victimization by Deputy Dale Stewart.

1

2. The forseeability of sexual victimization of Toby Andrews and Brandon McCroskey by Deputy Dale Stewart.

3. The degree to which the Butler County Sheriff Department fulfilled their duty to protect Toby Andrews and Brandon McCroskey from sexual victimization by Deputy Dale Stewart.

4. The emotional damage suffered by Brandon McCroskey and Toby Andrews as a result of being sexually victimized by Deputy Dale Stewart, and the relationship of these mental damages to the Butler County Sheriff Department's failure to protect these plaintiffs.

## Professional Credentials

I feel qualified to render opinions in this matter due to my research, academic, and practical experience in adolescent development and child/adolescent abuse and neglect. I hold a B.A. in psychology, an M.A. in psychology, and a Ph.D. in educational sociology from Wayne State University in Detroit, Michigan. From 1969 until 1975, I worked for the Wayne County Juvenile Court in Detroit, Michigan, as a probation officer, coordinator of student volunteer services, project director of the Companion Counseling Program, and project director of the Juvenile Court Improvement Projects. In these positions, I worked directly with chronic delinquent youth, abused and neglected youth, and youth detained in the Wayne County juvenile detention facility. I am also a psychologist licensed in the State of Michigan since 1978, and hold a diplomate in forensic clinical psychology awarded by the American College of Forensic Examiners. Over the past 30 years, I have been in private clinical practice performing psychotherapy and psychodiagnostics with delinquent, abused and neglected juveniles and their families.

I am also a tenured associate professor in the Department of Criminal Justice at Wayne State University. I have taught at this institution for the past 28 years, and have published two books and over 50 academic and professional articles. My primary areas of teaching and research expertise are juvenile justice, delinquency, child abuse and neglect, and counseling methods with youthful offenders.

## Materials Reviewed

In preparation for writing this report I read the Amended Complaint and Jury Demand, the depositions of Brandon McCroskey, Toby Andrews, Amanda Watts, Tamara Berter, Jeff Sandlin, Marc Dennett, Christopher Paprowski, Richard K. Jones, Greg Blankenship, Matt Ginter, Anthony Dwyer, Daniel Berter, Jeffrey David Duke, Mike Farthing, and Katie McMahon. I also reviewed the Butler County Sheriff's written policy regarding employee personal relations and sexual harassment (i.e., exhibits 8, 9, and 16), records pertaining to the Butler County Sheriff's internal investigation of this case (i.e., exhibits 7, 17, 22, and 23), and several other related exhibits (i.e., exhibits 1, 11, 12, 14, 15, 18, 19, and 24). I also conducted considerable research on police explorer's programs across the United States, and reviewed the Youth Protection Guidelines of the Boy Scouts of America and the Learning-for-Life Safety First Guidelines. I also reviewed several media reports concerning sexual abuse by police officers of adolescents enrolled in police explorers programs, and a detailed report by Samuel Walker and Dawn Irlbeck of the Department of Criminal Justice at the University of Nebraska at Omaha on the sexual abuse of adolescents by police. Finally, I reviewed several publications regarding emotional damage suffered by the adolescent victims of sexual abuse by trusted adult role models.

3

## Duty to Protect

### The Nature of Exploring

The Explorers is a national program operated by Learning-for-Life, a non-profit organization based in Irving, Texas. Learning-for-Life offers a variety of work site-based educational programs for young people between the ages of 14-20 designed to prepare them for responsible and productive adult lives. It maintains over 300 local offices around the county and operates programs with over 20,000 different organizations.

Law enforcement explorers programs provide young people with experience and training in police-related activities including criminal investigation, firearms, traffic control, and community service. During their time as explorers (which can span several years), youth can participate in traffic and ground control, assist at DUI checkpoints, search for crime scene evidence, search for lost children, assist in crime prevention programs, fingerprint small children, conduct bicycle safety inspections, assist dispatchers and participate in ride-along programs. My research revealed that explorers have been viewed by their sponsoring departments as unpaid employees, apprentices, interns, and trainees. As such, they spend considerable time with police officers who first volunteer and then are typically screened, selected, and trained to serve as advisors to these youth. Selected post advisors then instruct, mentor, and train adolescent explorers in many crucial areas including the criminal justice system, patrol procedures, traffic and ground control, CPR-first air, drill formation, marksmanship, accident investigation, crime scene investigation, vice and narcotics investigation, search and arrest procedures, fingerprint lifting, riot control procedures, domestic complaints, self-defense, radio operations, and traffic investigations.

4

During the typically long-term, on-going nature of explorer training, mentoring and supervision, explorers often develop close bonds and intimate personal ties with their post advisors similar to the ties that develop between coaches and athletes. This combination of interpersonal bonding between explorer and police advisor, the trust it engenders, the inherent power differential between the police advisor and explorer, and the opportunity for occasional one-on-one contact (e.g., ride-alongs), clearly creates the opportunity for boundary violations, including the possibility of sexual victimization. Clearly, the very nature of the explorer-advisor relationship underscores the need for sponsoring police departments to implement proactive measures to prevent possible boundary violations from happening between explorers and police officers.

The importance of taking such proactive preventive actions is further accentuated by the fact that young people are particularly vulnerable during adolescence. During this critical developmental period, youth are striving to develop a healthy, positive self-image which includes their sexual identity. While progressing toward adulthood, adolescents are in many respects still children; naïve, unconditionally trusting, and highly sensitive to the opinions and comments of both their peers and adult role models. While striving for independence, adolescents are still highly dependent on adults. While moving toward personal autonomy, adolescents also have periods of intense self-doubt. Thus, healthy same-sex adult role models are extremely important for the successful completion of the important developmental goals of adolescence. Victimization and betrayal by a trusted adult role model during this time can result in serious developmental dislocations which can result in traumatic sexualization, mistrust, powerlessness, and stigmatization.

Therefore, it goes without saying that police departments who choose to sponsor explorers programs assume the duty to protect the physical, sexual, and emotional well-being of their minor adolescent explorers. In fact, law enforcement agencies have a heightened duty to protect such youth stemming from their constitutionally-mandated responsibility and sworn oath to serve and protect the citizens in their communities. This heightened duty to protect young people is clearly cited in the Butler County Sheriff's own policy manual, "...as the courts have recognized, law enforcement officers are held to a higher standard of personal conduct than the public at large. Accordingly, employees of the Butler County Sheriff's Office are expected to conduct themselves on- and off-duty, in a manner that will not bring this office into disrepute." This heightened duty to protect juveniles was also asserted by Butler County Sheriff Chief, Richard K. Jones "...it takes a special person to work with kids...we have a higher standard than people out in society...we are expected to have higher standards," (Deposition, page 67).

This duty to protect is further underscored by the time-honored doctrine of *in loco parentis* which here means that when police agencies take on the supervision of minors, they are required to function in place of the parents and thus assume the same level of responsibility for a youth's welfare as the state demands of his or her parents. Police agencies are again held to an even higher duty to protect under this doctrine. Their responsibility is not simply to avoid inflicting harm on youth, or to investigate harm after it has occurred. Their responsibility is to *anticipate* potential harm and to act in advance to minimize or prevent it. Thus, both their constitutionally prescribed duty to protect and their *in loco parentis* duty to protect minors clearly requires police agencies to *foresee* possible harm to the youth under their care and to intervene *proactively* to prevent it. This

6

obligation attaches immediately for youth that police agencies arrest, detain, incarcerate, and for youth enrolled in police-sponsored prevention, diversion, and employment/mentoring/training programs like the police explorers.

## Forseeability

In my professional opinion, the forseeability of sexual victimization of the plaintiffs in this case by the Butler County Sheriff Department reaches the highest level for numerous reasons. First, the potential of sexual abuse of children and adolescents in organizational and institutional settings has become common knowledge. Hundreds of scholarly reports and studies, and thousands of media pieces have made it clear that it is not uncommon for trusted adults who work with young people in a variety of organizational settings to violate ethical, legal, and personal boundaries and sexually victimize such youth. The national media regularly publishes reports of adult-juvenile sexual boundary violations in day care settings, public and private schools, youth organizations such as the Cub Scouts, Boy Scouts and Junior Achievement, in medical settings, the clergy, and numerous others. The research is unequivocal, there is an inherent power differential between adults and young people which unfortunately is frequently violated by trusted adults for illicit sexual purposes.

Police agencies are especially aware of the potential for and the existence of adult-juvenile sexual abuse in all of the above settings. Police agencies are regularly called upon to investigate allegations of child or adolescent sexual abuse in such settings, to arrest alleged perpetrators and gather evidence for prosecutors, to testify at their court hearings, and to supervise their jail time. Any police agency that claims ignorance of the

need to understand, anticipate, and take the steps necessary to prevent the sexual victimization of young people is clearly out of step with contemporary police policy and practice.

Police agencies are also aware of the potential for the sexual victimization of adolescents by their own officers. There have been scores of well documented cases of sexual abuse of adolescents by police officers themselves. Many of these cases (each reported in the media) have involved the victimization of adolescents in police-sponsored explorer programs. For example, a recent report by Samuel Walker and Dawn Irlbeck in the Department of Criminal Justice at the University of Nebraska at Omaha, documented at least 72 cases of police officers sexual abuse of teenage girls and boys. While the majority of these violations (57%) involved police officers using their traffic enforcement powers to stop and sexually harass or assault teen drivers, some 42% involved police officers sexually victimizing adolescent minors in police-sponsored explorers programs. A number of these cases (like the present one) involved either multiple acts by a single officer or acts of sexual abuse by several officers. In short, the number of victims and incidents of misconduct far exceeded the number of "cases." The common theme in each of these cases was police officers using their law enforcement authority to take advantage of vulnerable adolescents. All police officers command authority by virtue of their positions. In all explorer-related cases, officers were dealing with young people in a special role of trust and authority which they ultimately violated. Each of these cases was well publicized in both local and national media, serving as potential wake-up calls for less vigilant departments sponsoring explorers programs.

8

In the present case, there were also several specific factors which loudly broadcasted the likelihood of sexual victimization of explorers by Deputy Stewart. These factors included (1) Deputy Stewart's sexual identity confusion and chronic display of lewd and unprofessional sexual remarks and innuendos, (2) Deputy Stewart's extreme one-on-one contact with certain male explorers, (3) Deputy Stewart's restriction of ride-along instruction to certain male explorers and his refusal of ride-along requests by female explorers, (4) Special favors, privileges, and gifts given by Deputy Stewart to certain male explorers, (5) Deputy Stewart's display in his office of pictures of himself with his arm around certain male explorers and, (6) Butler County Sheriff Department's stated concerns about Deputy Stewart's conduct with certain mail explorers which they never formally investigated.

## Deputy Stewart's Sexual Identity Confusion & Chronic Sexual Remarks and Innuendos

Several depositions which I reviewed contained references to Department confusion and joking about Dale Stewart's sexual orientation. For example, according to Deputy Mike Farthing, "Dale was one of those guys who never quite knew which way...if he was hetero...bi...or homo." Farthing also stated that there was much joking and commenting throughout the Department about Stewart being gay, and that deputies often made jokes about him in his absence. Matt Ginter stated, "We all came to the conclusion that he may have been homosexual...he never went out on dates, never married, lived with mom...always took guys on ride-alongs, never would take a girl." It is certainly no crime to be homosexual, nor does homosexuality necessarily preclude a police officer from being a successful advisor to the explorers. However, when an

9

officer's sexual orientation becomes a department joke, that officer's fitness to be an advisor to young males clearly becomes suspect.

Also, there were numerous comments in several depositions about frequent crude, lewd, and suggestive sexual remarks and innuendos made by Deputy Stewart. Deputy Matt Ginter, for example, overheard Stewart brag to several explorers that while on patrol at Miami University, he picked up four girls and had intercourse and oral sex with them in his patrol car. Ginter viewed these comments as extremely unprofessional. Virtually all of the explorers deposed in this case indicated that it was typical for Deputy Stewart to make suggestive sexual comments and innuendos to both male and female explorers. In fact, these sexualized actions of Deputy Stewart came to be expected and normative. Over and over again, comments like, "That's just Dale," or "There was always sexual joking with Dale" appeared in various depositions.

In my opinion, the Butler County Sheriff Department was clearly aware of Deputy Stewart's sexual identity confusion, as well as his propensity for unprofessional sexual comments and innuendos. It is also clear that this behavior was a violation of the Butler County Sheriff Department's sexual harassment policy defined as (1) sexual jokes of a provocative or suggestive nature, and (2) jokes or innuendos intended for or directed at another employee. It is also my opinion that this sexualized behavior by Stewart was deliberate and purposeful. To the extent that Deputy Stewart could make his sexual harassment acceptable and normative, and avoid Department discipline and condemnation, he was able to desensitize both his minor victims and his peers to this behavior, thus making it easier for him to stalk his young victims and ultimately seduce them.

**Deputy Stewart's Extensive One-on-One Contact with Particular Male Explorers**

There was voluminous evidence in various depositions that the Butler County Sheriff Department was clearly aware of the extreme amount of one-on-one contact between Deputy Stewart and certain minor male explorers, including Toby Andrews, Brandon McCroskey, and Jeff Sandlin. Their depositions indicated that both Jeff Duke and Matt Ginter (former explorers who later became advisors) were well aware of this extensive one-on-one contact between Stewart and these youth. Deputy Dan Berter, head explorer post advisor, was also well aware of such contact, and was apparently even told by certain explorers that Deputy Stewart and Jeff Sandlin were spending nights together. In fact, this one-on-one contact between Deputy Stewart and Jeff Sandlin became so routine that it led Deputy Mike Farthing to assume that Stewart and Jeff Sandlin were related. Farthing thought that Jeff must be Deputy Stewart's nephew or cousin because, "He was always picking him up, talking to him at meetings, and taking him home." This extreme one-on-one contact between Stewart and several male explorers clearly violated the Butler County Sheriff Department's own policy on relationships between supervisors and underlings as well as Learning-for-Life Safety First Guidelines which clearly prohibit (except for ride-alongs) one-on-one contact between explorers and advisors.

**Deputy Stewart's Restriction of Ride-a-Longs to Certain Male Explorers**

It was also clear from the depositions reviewed that several Butler County Sheriff deputies were aware that Dale Stewart restricted ride-alongs to certain male explorers and rejected all ride-along requests made by female explorers. Deputies Dan Berter, Jeff Duke, Matt Ginter, and Chris Paprowski all stated that they knew that Stewart only took certain male explorers on ride-alongs. In fact, explorer Amanda Watts complained to

Deputy Berter on several occasions that Dale Stewart continually ignored her ride-along requests.

## Deputy Stewart's Favors and Gifts to Certain Male Explorers

The depositions reviewed further revealed that several Butler County Sheriff deputies were aware of special favors and gifts which Deputy Stewart gave to certain male explorers. For example, Deputies Dan Berter, Jeff Duke, Matt Ginter, and Chris Paprowski were aware of a special radio frequency which Stewart reserved exclusively for certain male explorers to communicate solely with him. These individuals were also aware of Stewart's personal gift of a radio to Jeff Sandlin, and that Deputy Stewart took certain male explorers to movies, out to dinner, and to King's Island Amusement Park. They were also aware that Stewart promoted Jeff Sandlin over another explorer with more seniority. These special gifts, favors, and promotions by Deputy Stewart to select male explorers were not only suspicious and unethical, but clear violations of Learning-for-Life Safety First Guidelines designed to prevent potential boundary violations.

## Deputy Stewart's Display of Pictures with His Arm Around Certain Male Explorers

It is also clear from the depositions reviewed that several Butler County Sheriff deputies observed pictures of Deputy Stewart with his arm around certain male explorers prominently displayed on the desk in his office. For example, Deputy Dan Berter observed a picture of Stewart with his arm around Jeff Sandlin. Jeff Duke observed the same picture, and recalled an earlier photo on Stewart's desk with his arm around Brandon McCroskey. Deputy Duke realized that this picture was later replaced by the one of Stewart with Jeff Sandlin. Matt Ginter and Chris Paprowski also recalled seeing the picture of Stewart with his arm around Jeff Sandlin. Again, the taking and prominent

display of such pictures is not only suspicious and bizarre, but a clear violation of both the Butler County Sheriff Department's policy on relationships between superiors and subordinates, and Learning-for-Life Safety First Guidelines.

## The Investigation of Deputy Dale Stewart That Never Happened

It is also clear from the depositions reviewed that there was apparent concern about Deputy Stewart's excessive contact with certain male explorers by Butler County Sheriff personnel long before their official investigation of Stewart began in 2000. According to the deposition of Deputy Dan Berter, Major Sizemore made a comment to a deputy that Stewart was spending a lot of time with a couple of male explorers and "for us to let them know if we thought anything was going on. Berter mentioned this concern to other advisors (i.e., Jeff Duke and Cliff James), and in general terms to certain explorers (i.e., Brandon McCroskey and Chris Paprowski). In his deposition, Deputy Chris Paprowski stated, "...I had been told several times that the Sheriff's office was watching Dale, that their Internal Affairs was looking into it, and they might want to speak with me to see if I knew anything." Explorers Amanda Watts and Brandon McCroskey said they were also told something similar. Yet, none of these explorers was told specifically what this proposed investigation was about, and none was ever questioned. While they all stated that they assumed it was about Dale's inappropriate sexual behavior, no one in the Department ever pursued it. No one in the Department, including Deputy Dan Berter, the other post advisors, the other explorers turned deputies, or the Department administrators ever interviewed any explorers or advisors with specific questions or concerns about Deputy Stewart's behavior at that time.

13

Why these broadcasted concerns were not fully investigated at this earlier point in time is extremely difficult to understand. It must be mentioned, however, that Deputy Dan Berter, senior post advisor, was apparently having his own sexual affair with a female explorer during this approximate time period. While this explorer was apparently not a minor, Berter's behavior was nevertheless unethical and a clear violation of both Butler County Sheriff's policy on relationships between superiors and subordinates, and Learning-for-Life Safety First Guidelines. Thus, it is possible that his own unethical boundary violations made Deputy Berter less likely to report Deputy Stewart or to fully appreciate the gravity of his actions.

## **Failure to Protect**

In my professional opinion, it is absolutely clear that the Butler County Sheriff Department had a heightened duty to protect the plaintiffs in this case, Brandon McCroskey and Toby Andrews. It is also beyond argument that both the general possibility of explorer sexual abuse by police, and the specific possibility of sexual victimization of Brandon McCroskey and Toby Andrews by Deputy Dale Stewart were highly foreseeable. Furthermore, it is absolutely clear that the on-going sexual harassment and sexual abuse suffered by Brandon McCroskey and Toby Andrews was primarily the result of the Butler County Sheriff Department's on-going deliberate indifference to and callous disregard for the protection of the minor adolescents in its police explorers program. This on-going policy and practice of benign neglect and deliberate indifference has already been described in considerable detail. It's extent is

14

further illustrated by each of the following acts of omission and commission by the Department:

**(1) The Butler County Sheriff Department's failure to develop and implement written policies and procedures to inform both explorers and advisors about the nature, unacceptability, and consequences of sexual harassment and sexual abuse of explorers.** In my opinion, had both advisors and explorers been informed up front about the possibility and nature of such sexual abuse and that it would not be tolerated by the Department, it is likely that the victimization of these plaintiffs by Deputy Stewart would not have occurred.

**(2) The Butler County Sheriff Department's failure to develop and implement written policies and procedures for explorers and advisors to register complaints about inappropriate sexual activity.** There were no Department guidelines or policies for either explorers or advisors to follow to report suspected sexual boundary violations. When asked if there was a formal complaint process or chain of command for explorers to report such abusive acts, Butler County Sheriff administrators (i.e., Dwyer and Jones) repeatedly responded with general statements such as, "They knew they could get a hold of us." It is clearly naive for a police agency to passively assume that adolescents as young as 13 or 14 years of age will take the initiative to report sexual abuse by an adult police officer advisor. In fact, the literature consistently shows that most adolescent victims of sexual abuse either don't report the abuse, or find it extremely difficult to do so. The reasons for this are numerous, with some of the most well-documented ones reflected in the following comments of explorers who were sexually harassed or abused by Deputy Stewart, and others who weren't:

A. <u>Intimidation by Deputy Stewart's Authority</u>: "We didn't want to disrespect authority or overstep those boundaries, so we just went along with it" (Matt Ginter deposition, page 23). "Explorers were looked down upon at the Sheriff's office, they are nobody you know, and they made it very clear to all of us that we were nobody and what our status was at the Sheriff's office" (McCroskey deposition, page 87). "It was Dale's way or no way-he was always in control-who would believe me over him?" (Andrews deposition, page 146). "Who's going to believe a 15-year-old kid" (McCroskey deposition, page 87).

B. <u>Stewart's Use of His Adult Role-Model Status to Control Explorers</u>: "We became such good friends that it was almost like I was afraid to turn my friend in" (Sandlin deposition, page 24). "I looked up to him ...considered him a close friend" (Andrews deposition, page 30).

C. <u>Embarrassment and Fear of Victim Blaming</u>: "...I was afraid what others would think" (Paprowski deposition, page 35). "Not to mention the embarrassment of having to sit and tell someone you had a man old enough to be your father grab you and do things with you that you've never experienced with a girl yet...I just couldn't do it" (McCroskey deposition, page 87). Brandon McCroskey also described how several deputies teased him after making his disclosure, suggesting that he probably wanted the abuse because it took him so long to report it.

D. <u>Fear of Retaliation by Deputy Stewart or the Department</u>: Several explorers said they were afraid that if they told they would be ostracized

16

from the explorer's program, be less likely to be hired by the Department in the future, and might even experience personal retribution from Dale who they felt would have nothing to lose if he lost his job and/or went to prison. "...if you pissed somebody off, it was guaranteed you're probably not going to ever see anything from them" (Paprowski deposition, page 30). "...advisors said that being a good explorer increased your chances of being hired by the Department" (Dennett deposition, page 66).

E. <u>Deputy Stewart's Use of Perks, Gifts and Favors to Control Explorers</u>: It is clear that Deputy Stewart gave his victims radios, a private radio frequency to communicate exclusively with him, King's Island passes, movies, dinners, and even promoted one of his victims (Jeff Sandlin) over another explorer who had much more seniority (i.e., Chris Paprowski).

F. <u>The Normalization of Deputy Stewart's Sexual Comments and Innuendos</u>: Deputy Stewart's frequent sexual comments and innuendos were accepted and tolerated by the Department conveying the message to explorers that they were normal and acceptable. All of the explorers deposed indicated that they came to expect such behavior from Stewart. The comment, "That's just Dale" appeared over and over.

G. <u>Deputy Stewart's Brandishing a Weapon to Intimidate Explorers</u>: The impact of prominently displaying his gun during his sexual victimization of Brandon McCroskey and Jeff Sandlin at safety camp needs little explanation. In the words of Brandon McCroskey, "...a man in a powerful position with a gun in

in a tent wanting sexual favors is a threatening situation to me. The gun

was a threat." (McCroskey deposition, page 128).

Each of these reasons for not coming forward is classical and well documented in

child sexual abuse literature. It is also my professional opinion that the Butler County

Sheriff Department allowed the above reasons to take hold and motivate non-reporting by

both explorers and advisors by (1) failing to inform explorers and advisors directly about

sexual abuse prohibitions, consequences, and its intolerance by the Department, (2) by

failing to compose written policy statements for explorers and advisors defining sexual

harassment and sexual abuse, establishing clear reporting channels, and asserting a zero

retaliation stance for reporting and, (3) by condoning Deputy Stewart's on-going and

inappropriate sexual comments and gestures. By carrying out these expected

responsibilities, it is likely that the Butler County Sheriff Department would have either

prevented the sexual boundary violations by Deputy Stewart entirely, or that the

victimized explorers would have reported his sexual behavior much sooner.

**(3) Failure of the Butler County Sheriff Department administrators to actively**

**participate in the selection of explorer advisors.** The depositions of Department

administrators revealed an extreme lack of knowledge, oversight, and concern about both

the nature of their explorers program and the safety of explorers. In his deposition, for

example, Major Anthony Dwyer validated that there was no special chain of command

developed by the Department for either explorers or advisors to report sexual abuse, that

there was no formal screening, training, or selection process for post advisors, and that

there were no specific guidelines or policies for advisors to follow while relating to

explorers. While there were many references in various depositions to an explorers policy

18

manual, no one could produce such a manual, or clearly remember what was in it. According to Jeff Sandlin, "There was always talk about updating it and getting it out to all the explorers." Evidently, this was never done. While the Department has it's own 700 page policy manual, there apparently isn't a sentence in it pertaining to the explorers. This is difficult to understand considering the fact that the Department's official website showcases the explorers as a Department division comparable to its other divisions (e.g., robbery, homicide).

It is my opinion that Butler County Chief, William K. Jones, also failed to take the safety of explorers seriously. For example, several researchers who have studied the sexual abuse of explorers by police (e.g., Samual Walker and Dawn Irlbeck), as well as Learning-for-Life administrators, strongly recommend that police chiefs give special attention to their explorers program by (1) personally screening officers applying to work as explorers, (2) personally interviewing officers selected as explorer advisors, (3) personally emphasizing to officers chosen as advisors the gravity of inappropriate sexual conduct with explorers and, (4) personally stressing to selected advisors that sexual misconduct can result in prosecution. There was no evidence in any of the materials reviewed that any of these actions were taken by Chief Jones.

**(4) The Butler County Sheriff Department's failure to investigate their early suspicions about Deputy Stewart's excessive contact with certain male explorers.** There was considerable evidence in the materials reviewed that the Butler County Sheriff Department knew about Deputy Stewart's inappropriate sexual behavior and excessive one-on-one contact with certain male explorers. It is also clear that the Department should have investigated and stopped this conduct long before the victimized explorers

19

finally reported Stewart's actions triggering the Department's formal investigation in 2000. Evidence suggests strongly that the Department thought about conducting an earlier investigation, but for some inexplicable reason either changed its mind or decided to look the other way. Had an earlier investigation occurred, approximately one year's worth of sexual harassment and sexual victimization of Toby Andrews and Brandon McCroskey by Deputy Stewart could have been prevented.

**(5) The Butler County Sheriff Department's failure to conduct a thorough formal investigation in 2000, and make changes necessary to prevent future explorer abuse.** The depositions of the Department personnel who finally investigated the allegations of sexual victimization in this case (i.e., Greg Blankenship and Katie McMahon), and those of the explorers they interviewed indicated no effort to discern why these victimizations occurred, and thus a lack of concern for the future safety of explorers. No advisors other than Deputy Stewart were apparently interviewed during the investigation. No attempt was made to pinpoint the numerous signals forecasting Stewart's abuse and why they were chronically ignored. Also, no attempt was made by Department investigators to ask explorers why they didn't report Deputy Stewart's actions earlier. Furthermore, following the formal investigation, no attempt was made by the Department to develop and implement written policy or procedures concerning the nature, reporting, and consequences of sexual abuse with explorers. Incredibly, two explorers, Mark Dennett and Toby Andrews, took it upon themselves produce an explorer's policy statement following the investigation. Finally, there was no effort following the investigation to establish objective methods to screen, select, and train new or existing advisors. In my opinion, these facts serve only to underscore the chronic practice of deliberate

indifference and chronic neglect of the Butler County Sheriff Department to fulfill their heightened duty to protect explorers.

### Psychological Damages to Plaintiffs

In my professional opinion, as a direct and primary result of the Butler County Sheriff Department's failure to protect the plaintiffs in this case from the on-going sexual victimization of Deputy Dale Stewart, both young men experienced and likely will continue to experience severe emotional pain and distress that may require long-term medical and psychological care and treatment. Research on the effects of sexual exploitation of young male adolescents in situations similar to this one reveals that such youth typically develop problems trusting others, low self-esteem, anxiety and phobias, shame, guilt, physical problems, anger, self-abusing tendencies, depression, difficulty with touching, inability to relax, a distorted body image, difficulty with intimacy, potential abuse of alcohol and drugs, feelings of powerlessness, and sexual problems. In their depositions, both plaintiffs in this case indicated problems with trust, personal conflict, ambivalence about their own sexuality, nightmares, fear of retaliation, trouble sleeping, guilt, fear that getting treatment would affect their future careers, feeling cheated, eating disorders, and crying spells. One of the plaintiffs (McCroskey) was taking Wellbutrin, a well-known anti-depressant. The following personal account of his state of mind by Brandon McCroskey serves as a classic summary of well documented symptoms typically experienced by adolescents who have been sexually victimized by a trusted adult.

21

"...There's not a day I don't think about what's happened, or it at least don't cross my mind, and some days it's more than others. It bothers me. It bothers me a lot. It's not something I enjoyed experiencing. It was rough. It was hard. It was hard on my family. It was hard on me. My summer got ruined. My first summer out of high school was shot from the get-go, because all of this that happened...As far as my stress goes, I am not going to say that my hernia or any of the physical damage is due to the stress that it caused me. It may be. It may not be. I don't know...it was difficult to sleep sometimes...I think about what's going on now and wonder, you know, if I could have done something, if I should have done this or I should have said something. Emotionally it bothers me to think about what happened and know that I should have done something and didn't do it, and I mean I was afraid. I won't ever forget this. I won't ever forget what he did. I feel he deserved 400% of what he got and then some, and I hope he's getting what was done to me to him in prison. I mean that. I really do...I get a big ball in my stomach from talking about this stuff today. You have no idea how hard it is to sit here and tell a complete stranger that you were—molested or that you were violated sexually as a kid by a man old enough to be your father, somebody I looked up to, somebody I respected, somebody that I learned a lot from—that hurts—and that's causing me difficulty in trusting people. People have to work a lot harder now to earn my trust than they ever had to...I trusted Dale without a doubt. I loved Dale for a long—I trusted him and I cared a lot for him because I thought he cared about me, and only until after I learned his intentions were to gain my trust and then turn around and use them against me—it's caused me not to trust some people as quickly as I should. I have stomach problems. I'm not going to say—I may be depressed...I sleep a lot more now. I get real nervous like I am right now. Talking about this stuff, it bothers me. It bothers me a lot." (McCroskey deposition, pages 236-238).

22

## Summary

In his position as Butler County Sheriff Department Explorers Post Leader, Deputy Sheriff Dale Stewart, over a period of several years, subjected Brandon McCroskey and Toby Andrews to unwanted sexual harassment and sexual victimization. The Butler County Sheriff Department had an indisputable and heightened duty to protect Brandon McCroskey and Toby Andrews from the criminal sexual actions perpetrated by Deputy Dale Stewart. Furthermore, Deputy Dale Stewart's sexual victimization of Brandon McCroskey and Toby Andrews was vividly foreseeable by the Butler County Sheriff Department. However, because of the Butler County Sheriff Department's chronic policy of deliberate indifference to and callous disregard for the protection of Brandon McCroskey, Toby Andrews, and other minor explorers, they allowed them to be sexually harassed and sexually violated by Deputy Dale Stewart. As a direct and primary cause of the Butler County Sheriff Department's actions and omissions as described throughout this report, Brandon McCroskey and Toby Andrews suffered severe mental anguish and will likely continue to suffer serious emotional pain and distress long into the future likely necessitating long-term psychological (and perhaps medical) intervention.