48 Fed.Appx. 925

**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

Page 1

**C**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Sara A. ROBINSON, Personal Representative of the Estate of Eddie Robinson III, Deceased, Plaintiff-Appellant,
v.
TOWNSHIP OF REDFORD, Officer Diprima, individually and in his official capacity, Officer Turner, individually and in his official capacity, Defendants-Appellees.
**No. 01-1196.**

Oct. 17, 2002.

Widow of employee who had been shot on employer's premises after police had assured him that it was safe to remain on premises sued township and police officers under § 1983. The United States District Court for the Eastern District of Michigan, Edmunds, J., dismissed complaint. Widow appealed. The Court of Appeals, Little, District Judge, held that: (1) issue whether township created danger could not be resolved on motion to dismiss; (2) issue whether officers were qualifiedly immune could not be resolved on motion to dismiss; (3) issue whether direct causal link existed between township policy and custom and employee's death could not be resolved on motion to dismiss; and (4) issue whether employee's death was proximately caused by police officers' assurances could not be resolved on motion to dismiss.

Reversed and remanded.

West Headnotes

**[1] Federal Civil Procedure ☞1831**
170Ak1831 Most Cited Cases

Issue whether township created danger, so as to give rise to due process duty to protect, when police assured employee, after they had searched employer's premises but had failed to find armed intruder hiding therein, that it was safe to remain on employer's premises, could not be resolved at motion to dismiss phase, due to need for factual inquiry as to what was done and said by officers upon responding to burglar alarm at employer's premises. U.S.C.A. Const.Amend. 14; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Civil Rights ☞1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))

Established law of Sixth Circuit on January 28, 2000, for purposes of determining whether police officers were qualifiedly immune from claim that they violated employee's constitutional rights by incorrectly informing him that his employer's business, which showed signs of break-in, had been searched and was empty of potentially dangerous intruders, was Sixth Circuit's decision in *Kallstrom*, in which Court of Appeals noted that it had never held state or state actor liable under Fourteenth Amendment for private acts of violence, but that it had recognized possibility of doing so under state-created-danger theory, not Fourth Circuit's decision in *Pinder*. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[3] Federal Civil Procedure ☞1831**
170Ak1831 Most Cited Cases

Issue whether police officers were qualifiedly immune from § 1983 claim that they violated employee's constitutional rights by assuring him, after they had searched employer's premises but had failed to find armed intruder hiding therein, that it was safe to remain on employer's premises, could not be resolved on motion to dismiss, inasmuch as it was impossible to determine from pleadings whether officers' actions or omissions rose to level of indifference or recklessness required to sustain §

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**EXHIBIT**

C

48 Fed.Appx. 925
**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

Page 2

1983 claim. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[4] Federal Civil Procedure ☞1831**
170Ak1831 Most Cited Cases

Issue whether direct causal link existed between township policy or custom and death of employee, who entered employee's premises after police incorrectly advised him it was safe to do so, could not be resolved on motion to dismiss in § 1983 action, inasmuch as factual inquiry was required into events that transpired and into township policies or customs. 42 U.S.C.A. § 1983.

**[5] Federal Civil Procedure ☞1831**
170Ak1831 Most Cited Cases

Issue whether employee's death was proximately caused by police officers' incorrect assurances that he could safely enter employer's premises could not be resolved on motion to dismiss in § 1983 action, inasmuch as factual inquiry was required into events that transpired. 42 U.S.C.A. § 1983.
**\*926** On Appeal from the United States District Court for the Eastern District of Michigan.

Before SUHRHEINRICH and BATCHELDER, Circuit Judges; and LITTLE, District Judge. [FN*]

FN* The Honorable F.A. Little, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

LITTLE, District Judge.

**\*\*1** Plaintiff-appellant Sara A. Robinson, the personal representative of the Estate of Eddie Robinson III, brought suit under 42 U.S.C. § 1983 against defendants-appellees Township of Redford and Officers Diprima and Turner in their official and individual capacities. The district court dismissed Robinson's claim on the pleadings. From that decision, Robinson appeals. For the reasons explained below, we REVERSE the decision of the district court and REMAND for further proceedings.

*I. BACKGROUND & PROCEDURAL HISTORY*

On or about 28 January 2000, police officers in the Township of Redford, Michigan responded to a burglar alarm at the Advanced Custom Van shop, a local business. The owner of the business, Diane Wolf, and Eddie Robinson III, an employee, reported to the business shortly after **\*927** the police arrived. Robinson and Wolf noticed one of the building's windows had been broken. The responding police officers, defendants Diprima and Turner, advised Robinson they had searched the business, found no one inside, and that it was safe for Robinson and Wolf to remain on the premises. After the police departed, Robinson entered the building. An intruder, who had been hiding in the waiting room, shot and killed Robinson.

Robinson's widow, Sara A. Robinson, filed suit under 42 U.S.C. § 1983, alleging Officers Diprima and Turner violated the decedent's substantive due process rights guaranteed by the Fourteenth Amendment. The plaintiff also alleges the Township of Redford, contrary to Section 1983, developed and maintained policies, customs, or practices exhibiting deliberate indifference to the constitutional rights of the public. Defendants filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). The United States District Court for the Eastern District of Michigan granted defendants' motion. *Robinson v. Redford Township,* Case No. 00-73100 (E.D.Mich. Jan. 18, 2001). The plaintiff timely filed this appeal. This court's appellate jurisdiction rests upon 28 U.S.C. § 1291.

*II. STANDARD OF REVIEW*

A district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Goad v. Mitchell,* 297 F.3d 497, 500 (6th Cir.2002). All well-pleaded allegations in the complaint are treated as true, and the dismissal of the complaint is deemed proper " 'only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.' " *Id.* (citing *Kostrzewa v. City of Troy,* 247 F.3d 633, 638 (6th Cir.2001); *see also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The dismissal of a civil rights complaint under rule 12(b)(6) is carefully scrutinized on appeal. *Kent v. Johnson,* 821 F.2d 1220, 1223 (6th Cir.1987); *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir.1985). Although "a complaint need not set down in detail all the particularities of a plaintiff's claim," the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

48 Fed.Appx. 925
**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

Page 3

complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976); *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. A 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). For Robinson to succeed on appeal, we must find that the district court erred in its determination that Robinson failed to allege federal claims.

### III. *ANALYSIS*

**\*\*2** To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights,* 265 F.3d 399, 405 (6th Cir.2001) (citing *Soper ex rel. Soper v. Hoben,* 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000). In addition to denying that the plaintiff has stated a claim under Section 1983, the defendants Diprima and Turner have asserted the affirmative defense of qualified immunity. Defendants also contend that their actions or omissions were not the proximate cause of Robinson's death, so their liability is precluded. We address each of these assertions in turn.

Section 1983 Liability

To determine government liability under the Constitution for acts committed by private actors, we turn to *DeShaney v. Winnebago County Dept. of Soc.* **\*928**Services, 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989) (finding no due process violation where a young boy was seriously injured by his abusive father after the state failed to remove the boy from his father's custody). In that case, the Supreme Court stated "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. at 1002. Rather, the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196, 109 S.Ct. at 1003. The Court did note that "when the State takes a person into its custody and holds him there against his will," the Constitution imposes some responsibility upon the state for the person's "safety and well-being." *Id.* at 199-200, 109 S.Ct. at 1005-1006. Generally, there is no "affirmative

duty on the government to provide for a person's safety, unless the government has restrained that individual through 'incarceration, institutionalization, or other similar restraint of personal liberty.' " *Walton v. City of Southfield,* 995 F.2d 1331, 1337 (6th Cir.1993) (citing *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1008-09).

The restraint of personal liberty creates a "special relationship" between the state and the citizen in custody. *Gazette,* 41 F.3d at 1065. A special relationship triggers the state's duty to protect the citizen. *Id.* Courts have recognized that it is possible for the state to have a special relationship with a criminal or a victim in a noncustodial setting, creating potential Section 1983 liability. *Id.* It has been recognized also that Section 1983 liability is not restricted to situations in which a special relationship exits. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998) (noting the Supreme Court acknowledged the possibility that "the state may be liable for private acts which violate constitutionally protected rights despite the absence of a special relationship" in *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006).

**\*\*3** Several circuit courts, including this one, have interpreted *DeShaney* to include a noncustodial exception to the general rule that the state has no duty to protect citizens. *Id.; L.W. v. Grubbs,* 974 F.2d 119, 122 (9th Cir.1992); *Ross v. United States,* 910 F.2d 1422, 1431 (7th Cir.1990). This noncustodial exception arises when the state either plays a role in creating a danger to an individual or renders an individual more vulnerable to a danger. *Kallstrom,* 136 F.3d at 1066. "Liability under the state-created- danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.* Plaintiffs bringing a Section 1983 claim must "show 'special danger' in the absence of a special relationship between the state and either the victim or the private tortfeasor." *Id.* A "special danger" has been defined as a situation "where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* Under the state-created-danger theory, a court must find that the state knew or clearly should have known "that its actions specifically endangered an individual." *Id.*

In *Kallstrom,* this court ruled that a city's disclosure

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

48 Fed.Appx. 925
**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

Page 4

of personal information about undercover police officers to a criminal defense attorney created a special danger "by substantially increasing the likelihood that a private actor would deprive [the officers] of their liberty interest in personal security." *Id.* at 1067. The affirmative release of private information about the officers placed those officers and their families, as opposed to the public at large, in danger of retribution by the private **\*929** individuals being represented by the defense attorney. The city knew or should have known that releasing this information would create this special danger. The *Kallstrom* court held that the release of personal information created "a constitutionally cognizable 'special danger,' giving rise to liability under Section 1983." *Id.*

The requisite intent of state officials is higher in state-created-danger actions than in ordinary tort claims. Neither simple nor gross negligence on the part of state officials is sufficient to support a finding of a constitutional violation. *Gazette,* 41 F.3d at 1066. In a custodial context, a plaintiff must show that the actions or omissions of state actors rose to the level of deliberate indifference or recklessness toward human life. *Davis v. Brady,* 143 F.3d 1021, 1026 (6th Cir.1998) (finding that the standard established in eighth amendment claims by prisoners "applies to substantive Due Process claims raised by other persons in the custody of the state."); *see also Ross,* 910 F.2d at 1431. These cases suggest deliberate indifference or recklessness is the appropriate standard to apply to the state-created-danger theory of liability.

**\*\*4** As defendants point out, other courts have read *DeShaney* "to require a custodial context before any affirmative duty can arise under the Due Process Clause." *Pinder v. Johnson,* 54 F.3d 1169, 1175 (4th Cir.1995). The Fourth Circuit has concluded that a state actor's promise does not create a special relationship that subjects the state to Section 1983 liability, nor does state conduct making "injury at the hands of a third party more likely" constitute an affirmative act or creation of a danger. *Id.* In *Pinder,* the court stressed that there is a difference between a state-created danger and a failure of the state "to provide adequate protection from that danger." *Id.* (rejecting the argument that a police officer's alleged promise to hold the plaintiff's violent ex-boyfriend in jail overnight created an affirmative duty).

Nevertheless, the *Pinder* court conceded "[w]hen the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive. In such instances, the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." *Id.* at 1177. In these situations, the distinction between state action and state omission blurs, making it difficult to determine the state's role in creating the dangerous situation without examining the factual circumstances.

[1] It is in the gray area between creating a danger and failing to protect from a danger that this case lies. Defendants did not protect Robinson from the intruder in his business offices. Whether this lack of protection was a failure to act or a direct cause of harm to Robinson cannot be determined upon the pleadings as a matter of law. Rather, there must be some factual inquiry into what was done and said by the police officers who responded to the burglar alarm at Robinson's business. At the time this case was dismissed, plaintiffs had had no opportunity to investigate the actions and assurances of the officers, nor had plaintiffs been able to inquire into the mental state of the officers at the time of their investigation of the crime scene. The state-created-danger theory is a narrow exception, and it is possible that plaintiff's claim does not fall within its limited boundaries. Plaintiffs must be given an opportunity, through discovery and other pre-trial devices, to delve into the circumstances of 28 January 2000 and to determine if the acts, omissions, or assurances of the defendants are sufficient to impose an affirmative duty upon the Township and its officers.

**\*930 Qualified Immunity**

In a civil action for monetary damages, a state actor may assert the affirmative defense of qualified immunity for "discretionary acts that do not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Goad,* 297 F.3d at 501 (citing *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Defendant police officers contend they are entitled to qualified immunity because they could not have known, on the basis of the law as it existed on 28 January

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

48 Fed.Appx. 925
**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

2000, that their conduct violated the decedent's constitutional right to substantive due process.

**\*\*5** To impose liability upon the police officers under Section 1983, the plaintiff must establish two elements. *Goad,* 297 F.3d at 501 (citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156-57, 150 L.Ed.2d 272 (2001)). First, the plaintiff must show a violation of a constitutional right. Second, the plaintiff must demonstrate that the right is "so clearly established" that a "reasonable [officer] would understand that what he is doing violates that right." *Davis,* 143 F.3d at 1024. A constitutional right is clearly established if the law is " 'clear in regard to the official's particular actions in the particular situation.' " *Walton,* 995 F.2d at 1335 (citing *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991)).

It has been recognized that persons have a constitutional right under the Fourteenth Amendment to personal security and bodily integrity. *See Doe v. Claiborne County,* 103 F.3d 495, 506 (6th Cir.1996) (citing *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977)). Whether the particular actions of the officers in this particular situation violated the decedent's constitutional right to personal security cannot be ascertained at this stage of the litigation.

[2][3] The plaintiff argues, correctly, that Sixth Circuit law on 28 January 2000 was established by this court's decision in *Kallstrom,* rather than the Fourth Circuit's opinion in *Pinder.* In *Kallstrom,* the court noted that the Sixth Circuit had "never held the state or a state actor liable under the Fourteenth Amendment for private acts of violence," but it had "recognized the possibility of doing so under the state-created-danger theory." *Kallstrom,* 136 F.3d at 1066. Although it is clear under the law of this circuit that a state actor may be held liable for private acts of violence, it remains unclear whether incorrectly informing an individual that his business, which shows signs of a break-in, has been searched and is empty of potentially dangerous intruders violates a constitutional right. On the basis of the pleadings, it is not possible to determine whether the actions or omissions of the defendant officers rose to the level of indifference or recklessness that is required to sustain the Section 1983 claim. On remand, the plaintiff will bear the burden of proving that the defendant officers are not entitled to qualified immunity.

*Walton,* 995 F.2d at 1340- 41 (citing *Washington v. Newsom,* 977 F.2d 991, 995 (6th Cir.1992)).

Failure to Train

The plaintiff also seeks to hold the Township of Redford liable under Section 1983 for failure to train its police officers.

A local government may be held liable under Section 1983 only for its own unconstitutional or illegal policies or customs. *Gazette,* 41 F.3d at 1064 (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). A local government may not be held liable for the acts of its employees under a respondeat superior theory. **\*931**_Monell,_ 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d 611 (1978) (concluding injuries caused solely by employees or agents may not be attributed to a local government for purpose of Section 1983 liability). Rather, a plaintiff must show that a government policy actually caused the injury sustained. *Gazette,* 41 F.3d at 1067; *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037-38 (holding "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983."). In addition, a local government may not be held liable for the actions of private citizens. *Doe,* 103 F.3d at 507; *Gazette,* 41 F.3d at 1064-65.

**\*\*6** To hold the Township of Redford liable under Section 1983, the plaintiff must show the existence of a policy or custom that informed the actions of the defendant officers when they inspected the decedent's business premises. The plaintiff also must show "a direct causal link" between the Township's policy or custom and the constitutional deprivation alleged. *Doe,* 103 F.3d at 508. This requires the plaintiff to demonstrate that Robinson's death occurred because the defendant officers followed the Township's policy or custom. *Id.*

[4] As with the issues discussed above, there has not been sufficient inquiry into the events of 28 January 2000 to determine whether a direct causal link exists between a policy or custom and Robinson's death that would subject the Township of Redford to Section 1983 liability. Obviously, the intruder bears the ultimate responsibility for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

48 Fed.Appx. 925

**(Cite as: 48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.)))**

fatally wounding Robinson. The possibility has not been precluded that some Township policy or custom adhered to by the defendant officers contributed to the intruder's acts that resulted in Robinson's death. The plaintiff needs to examine the actual events that transpired that evening as well as to investigate which Township policies or customs, if any, may have governed the actions the officers took-or did not take-when they searched the Advanced Custom Van shop after the burglar alarm was sounded.

Proximate Cause

Finally, the defendants contend there is an insufficient causal connection between their actions and assurances on the night of 28 January 2000 and Robinson's death. Defendants rely on *Gazette,* in which this court held a police department's lies to the family of a missing woman about the extent of their investigation into her disappearance were not causally connected to her death. *Gazette,* 41 F.3d at 1066. The court found the police officers' prevarications did not create a danger to the missing woman, nor did the false statements render the woman more vulnerable to danger. *Id.* at 1065. Having only failed to rescue the missing woman, the police officers had violated no affirmative duty and could not be held liable under Section 1983. *Id.* at 1065-66.

[5] The *Gazette* court stated "[t]here cannot be Section 1983 liability where the actions of one private individual leading to the injury or death of another individual are too remote from the allegedly wrongful state action." *Id.* at 1066. Although the court in that case was confident that the actions of the woman's abductor were adequately remote from the police officers' misrepresentations to the family, we cannot be certain here that there was insufficient proximity between the defendant officers' actions and assurances and Robinson's death. Again, we return to the question of whether the defendant officers actually created a danger to the decedent or merely failed to protect him from the intruder in the waiting room. Further inquiry into the events of that **\*932** evening is necessary before it can be determined that there was no causal connection between the actions of the police and Robinson's death.

IV. *CONCLUSION*

**\*\*7** The events that transpired on 28 January 2000 were certainly tragic, and at this stage of the litigation it cannot be determined whether they failed to rise to the level of a constitutional violation. This court therefore REVERSES and REMANDS this case for further proceedings consistent with this opinion.

48 Fed.Appx. 925, 2002 WL 31398974 (6th Cir.(Mich.))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works