Not Reported in N.E.2d  
(Cite as: 1996 WL 488847 (Ohio App. 5 Dist.))

Page 1

C  
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Fifth District, Morrow County.

Heidi J. Linder CHARLES, et al.  
Plaintiffs-Appellants  
v.  
CARDINGTON-LINCOLN LOCAL SCHOOL DISTRICT, et al. Defendants-Appellees

No. 821.

Aug. 19, 1996.

CHARACTER OF PROCEEDING: Civil Appeal from the Court of Common Pleas Case No. 22,163

For Plaintiffs-Appellants CHRISTOPHER L. LARDIERE THOMAS L. MAGELANER Kemp, Schaeffer & Rowe Co., LPA 88 West Mound Street Columbus, OH 43215

For Defendants-Appellees J. MACALPINE SMITH Smith, Smith & Montgomery 112 North Main Street Bellefontaine, OH 43311

Before HOFFMAN, P.J., and GWIN and READER, JJ.

*OPINION*

HOFFMAN, P.J.

*1 Plaintiffs-appellants Heidi J. Linder-Charles, Pam Linder and Roger Linder appeal the Judgment Entry of the Court of Common Pleas of Morrow County, granting summary judgment in favor of defendants-appellees Cardington-Lincoln Local School District and Neil Swonger.

STATEMENT OF THE FACTS

During the 1988-89 school year, appellant Heidi Linder-Charles was a student in the Vocational Agriculture II class offered at Cardington-Lincoln High School [FN1] and taught by appellee Neil Swonger. As part of the requirements for this class, Heidi was required to use the power tools, including a DeWalt Radial Arm Saw. Heidi was instructed on the use of this saw through lectures and demonstrations given by appellee Swonger.

> FN1. Cardington-Lincoln High School is owned and operated by appellee Cardington-Lincoln School District.

The DeWalt Radial Arm saw used by Heidi and at issue herein was purchased by appellee Cardington-Lincoln Local School District (hereinafter Cardington) in 1967. Appellants maintain the saw was defective in several respects. First, appellants argue the saw was not maintained in a safe and proper manner because it allegedly did not contain a lower blade guard. Second, appellants argue the saw was not properly maintained because it was not kept in such a way that the front end of the saw was slightly higher than the rear end of the saw. Appellants argue the saw should be kept in such a manner so as to ensure that the cutting head of the saw returns to the starting position when released by the operator. Third, evidence was introduced suggesting the blade of the saw was dull, allowing the blade to "bite" or catch on the wood being cut and pull the wood out of place. (Carpenter Record at 3.)

Finally, appellants argue the saw was improperly maintained because there was a large gap in the "fence" or "bridge." A fence/bridge is located at the rear of the table and has several purposes. (Hershock Depo. at 71-8, 86-7.) One of the purposes of the fence/bridge is to support the wood being cut and keep it from moving. (*Id.*) Appellants maintain the other purpose of the fence/bridge is safety related. (*Id.*) They note that, as the saw blade rotates, the blade pulls the wood being cut against the fence/bridge. If the fence/bridge is removed or a portion of it is missing, the operator's hand becomes the only force keeping the wood from moving. (*Id.*) Appellants herein maintain the large gap in the fence/bridge of the saw in the instant case defeated the safety function of the fence/bridge and contributed to Heidi's injuries, described below.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT  
E

Not Reported in N.E.2d  
(Cite as: 1996 WL 488847 (Ohio App. 5 Dist.))

Page 2

On May 18, 1989, Heidi was using the radial arm saw in appellee Swonger's class on a piece of wood approximately 15 inches long. Heidi testified she placed the wood to the left of the blade, lined up the blade and, holding the wood with her left hand, began to cut the right end of the wood. (Linder 7/22/91 Depo. at pp. 86-90.) While attempting to cut the wood on said saw, Heidi's left hand was pulled into the blade and severed.

STATEMENT OF THE CASE

*2 On May 17, 1990, appellants filed an action in the Morrow County Court of Common Pleas under Case No. 20,682 against appellees Cardington and Swonger. [FN2] Subsequently, on March 4, 1993, appellants dismissed Case No. 20,682 pursuant to Civ.R. 41(A). Appellants then refiled this action on October 21, 1993, in Morrow County Court of Common Pleas Case No. 22,163.

> FN2. Black and Decker, the manufacturer of the saw which injured Heidi, was also named as a defendant in appellants' first complaint. However, a settlement was subsequently reached with Black and Decker and it was dismissed from the action.

Appellees filed their Motion for Summary Judgment on December 12, 1994. In addition, appellees filed a Motion to Strike certain exhibits attached to appellants' Memorandum Contra to Motion for Summary Judgment on February 7, 1995. On August 11, 1995, the trial court issued a judgment entry, granting appellees' motion to strike in part and granting appellees' motion for summary judgment.

It is from this entry that appellants now appeal, raising the following four assignments of error:
I. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT TO SUPPORT A FINDING THAT THE APPELLEES BREACHED A DUTY OWED TO APPELANTS [SIC].
II. THE TRIAL COURT ERRED IN FINDING NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE APPELLEES [SIC] CONDUCT WAS RECKLESS OR WANTON.
III. THE TRIAL COURT ERRED IN STRIKING EXHIBITS 3, 4, AND 12 OF THE APPELLANTS [SIC] MEMORANDUM CONTRA TO APPELLEES [SIC] MOTION FOR SUMMARY JUDGMENT.
IV. THE TRIAL COURT ERRED IN STRIKING PORTIONS OF APPELLANTS [SIC] EXPERT'S AFFIDAVIT.

I. & II.

Civ.R. 56(C) states, in pertinent part:
> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. In order to survive a motion for summary judgment, the non-moving party must produce evidence on any issue to which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, citing *Celotex v. Catrett* (1986), 477 U.S. 317. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36.

In their first and second assignments of error, appellants argue the trial court erred in granting summary judgment in appellees' favor because genuine issues of material fact remain regarding whether appellees breached a duty owed to appellants and whether appellees' conduct was reckless or wanton. Appellees respond, and the trial court found, they are immune from liability under the Political Subdivision Tort Liability Act set forth in R.C. Chapter 2744.

*3 R.C. Chapter 2744 provides a three-tiered

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 488847 (Ohio App. 5 Dist.))

Page 3

analysis for determining the availability of sovereign immunity to political subdivisions. R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for injury, death or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of that political subdivision. This provision is generally referred to as the "blanket immunity" provision.

R.C. 2744.02(B) then lists five exceptions to the blanket immunity provision described above. The subsection relevant herein is R.C. 2744.02(B)(4), which provides:

> (4) Political subdivisions are liable for injury, death or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code. (Emphasis added.)

It is undisputed that appellees in the instant case are political subdivisions performing governmental functions and are, therefore, initially provided sovereign immunity under the blanket immunity provision noted *supra*. They lose their immunity only if the allegations set forth by appellants demonstrate negligence on the part of appellees, occurring within or on the grounds of buildings that are used in connection with the performance of their governmental function; i.e. the provision of a system of public education. See R.C. 2744.01(C)(2)(c).

In arguing whether appellees fall within R.C. 2744.02(B)(4)'s exception to the blanket immunity afforded political subdivisions, the parties debate the status of Heidi as either a licensee or invitee. We find this determination to be irrelevant to our determination of this issue. It is well settled that public school teachers are required to exercise reasonable care in the performance of their duties. *Baird v. Hosmer* (1976), 46 Ohio St.2d 273. Although there is no general duty to watch over each child at all times, school personnel are bound under common law to exercise that care necessary to avoid reasonably foreseeable injuries. *See: Nottingham v. Akron Bd. of Edn.* (1992), 81 Ohio App.3d 319, 322; *Allison v. Field Local School Dist.* (1988), 51 Ohio App.3d 13, 14.

With these principles in mind and construing the facts in a light most favorable to appellants, we find the trial court erred in granting summary judgment in favor of appellees on the issue of whether appellees breached a duty of care owed to appellants. The record reflects both Heidi, appellee Swonger and Patrick Drouhard (Superintendent of Schools for appellee Cardington) testified there was a gap in the fence/bridge of the saw in question. (Linder 7/7/92 Depo. at 34; Swonger Depo. at 71-2; Drouhard Depo. at 16.) Further, appellants introduced testimony indicating the fence/bridge served a safety purpose and that, if portions of the fence/bridge were removed, this safety purpose is defeated, posing a risk of injury to the operator. (Hershock Depo. at 71, 78, 86-7.)

*4 Finally, appellants introduced the investigative report of Mr. Drouhard to support their argument the gap in the fence/bridge in the instant case proximately caused Heidi's injuries. Appellees argue Mr. Drouhard's investigative report does not support appellants' position because (1) said report was based on Mr. Drouhard's mistaken belief that Heidi incorrectly placed the board to the right of the blade and (2) Mr. Drouhard abandoned his opinion that the gap in the fence/bridge contributed to Heidi's injuries after learning Heidi had testified she held the board on the left side of the blade. (Brief of Appellees at 22-4.) We believe appellees' arguments raise issues of credibility which are properly reserved for the jury's determination. Therefore, we find appellees' arguments to be without merit and believe appellants have produced sufficient evidence to survive summary judgment of the issue of negligence relative to the gap in the fence/bridge.

In addition, we believe appellants have introduced sufficient evidence to survive summary judgment regarding whether appellees were negligent in failing to maintain the blade of the saw in a sharp condition. The record reflects Thomas Carpenter, appellants' expert in the area of agricultural and safety engineering, stated that appellees' failure to maintain a clean, sharp blade exhibited their disregard for student safety and contributed to Heidi's injuries. (Carpenter Report at 3.) In light of Mr. Carpenter's Report, we find appellants have

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d  
**(Cite as: 1996 WL 488847 (Ohio App. 5 Dist.))**

Page 4

produced sufficient evidence to survive summary judgment on the issue of negligence relative to the alleged dullness of the blade.

However, this does not end the analysis. Although appellants have produced sufficient evidence regarding whether appellees fall within the exception to blanket immunity set forth in R.C. 2744.92(B)(4), appellees escape liability if they qualify for one of the defenses set forth in R.C. 2744.03. R.C. 2744.03(A)(5) and (6) are relevant to the instant case and provide as follows:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, material, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:
\*5 * * *
(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.
(Emphasis added.)

Upon review of the record, we find appellee Cardington initially falls within R.C. 2744.03(B)(5)'s defense to liability because appellee Swonger's use of the saw as an in-class tool constitutes an exercise of judgment or discretion in determining how to use equipment, supplies, material, etc., pursuant to R.C. 2744.03(A)(5). Further, as an employee of appellee Cardington, appellee Swonger initially qualifies individually for the defense to liability set forth in R.C. 2744.03(B)(6). Appellees lose the protection of these defenses only if appellants can demonstrate appellees acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."

In *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, the Ohio Supreme Court adopted the definition of "reckless" found in 2 Restatement of the Law 2d, Torts (1965) 587, Section 500 as follows:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
(Emphasis added.)
In that the term "reckless" is often used interchangeably with the term "wanton," the definition of reckless set forth above applies equally to conduct characterized as "wanton." *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104.

Construing the evidence in a light most favorable to appellants, we find appellants have produced sufficient evidence to survive summary judgment on the issue of whether appellees acted in a wanton or reckless manner in their use and maintenance of the saw in question. The record reflects appellants have introduced evidence indicating appellees failed to (1) equip the blade with a lower blade guard; (2) maintain a clean, sharp blade; (3) maintain the saw in such a manner so the front end of the saw is slightly higher than the rear end in accordance with installation instructions; (4) maintain the fence/bridge in a safe, appropriate manner and (5) adequately instruct Heidi on the use of the saw. (Hershock Depo. at 71-8, 86-7; Swonger Depo. at 23-4, 37-45, 50-7, 71-2; Carpenter Report at 3; Drouhard Depo. at 16; Linder Depo. at 34.) Further, appellants introduced evidence indicating appellees' alleged acts/omissions, noted above, constituted "wanton misconduct" and a reckless disregard for Heidi's safety. (Carpenter Report at 3.) We believe this evidence, taken as a whole, is sufficient to create a jury question as to the overall determination of whether appellees acted in a wanton or reckless manner with regard to the saw in question. Accordingly, we hold the trial court erred in granting summary judgment in appellees' favor on the issue of whether appellees engaged in wanton or reckless conduct.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
**(Cite as: 1996 WL 488847 (Ohio App. 5 Dist.))**

Page 5

**\*6** Appellants' first and second assignments of error are sustained.

### III. & IV.

In their third and fourth assignments of error, appellants argue the trial court erred in striking exhibits 3, 4, and 12 of appellants' Memo Contra to appellees' Motion for Summary Judgment and portions of appellants' expert's affidavit.

In light of our disposition of appellants' first and second assignment of error, we find appellants' third and fourth assignments of error to be moot and will not consider them herein.

For the foregoing reasons, the judgment of the Court of Common Pleas of Morrow County is reversed.

GWIN and READER, JJ., concur.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Morrow County, Ohio, is reversed and the case remanded to the court for further proceedings in accordance with our opinion and the law.

1996 WL 488847 (Ohio App. 5 Dist.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works