UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRANDON McCROSKEY, et al.,          :      NO. 1:01-CV-00429
                                    :
        Plaintiffs,                 :
                                    :
        v.                          :      **ORDER**
                                    :
BUTLER COUNTY SHERIFF'S OFFICE,     :
                                    :
        Defendant.                  :

        This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 18), Plaintiffs' Memorandum in Opposition
(doc. 21), and Defendant's Reply (doc. 25)

**BACKGROUND**

        The following facts have been derived from the various
pleadings, motions, and responses in this matter.  This is a case
of sexual abuse and harassment in which an employee of Defendant,
Butler County Sheriff's Office, (hereinafter BCSO), harassed and
abused the two Plaintiffs, who were minors participating in a
program under the BCSO's direction.  Plaintiffs allege that the
Sheriff's Office allegedly knew of the potentially abusive
situation and nevertheless did nothing to remedy it.  Plaintiffs
have brought an action pursuant to 42 U.S.C. § 1983 for violation
of their Constitutional rights to personal security and bodily
integrity as secured by the Due Process Clause of the Fourteenth
Amendment.

        Defendant operates an "Explorers" program, with the

1

intended purpose to give young people, aged 14 to 21, the opportunity to gain experience and training in the field of law enforcement through planned activities, competitions, and mentorship (doc. 21). Plaintiff McCroskey joined the program in 1994, at the age of 12, and participated until 2002. Plaintiff Andrews became a member in 1999 and continued his participation at least until he gave his deposition on December 31, 2002 (Id.)

Both Plaintiffs claim that, while Explorers, an Assistant Advisor to the program, Dale Stewart, sexually abused and harassed them (doc. 18). Stewart, who also worked for the Emergency Management Agency ("EMA") of Butler County, began abusing Plaintiffs in either 1995 or 1996, and continued until 2000 (doc. 21). Ultimately Stewart was arrested and pled guilty to two counts of sexual battery.

Stewart's harassment of Plaintiff McCroskey consisted of various instances in which he touched Plaintiff's genitals while in Stewart's cruiser, in an EMA vehicle, at the house of another Explorer, and at the EMA offices (doc. 18). At BCSO's Safety Camp in the summer of 1999, Stewart invited McCroskey and another Explorer to sleep with him in a tent. After making it known that he had a gun, Stewart proceeded to sexually assault both boys (doc. 21).

Plaintiff Andrews believed that he had a normal relationship with Stewart, until 2000, when Stewart rubbed Andrews'

2

leg and felt his genitals while he was a passenger in Stewart's cruiser. Thereafter, Stewart repeatedly molested Andrews. Andrews finally reported the abuse after declining an offer to sleep in a tent with Stewart during Safety Camp in the summer of 2000 (Id.).

Plaintiffs allege that an informal relationship between participation in the Explorers program and future employment with the Butler County Sheriff's Department exists (doc. 21). Explorers stated in their depositions that service in the program "looks good" and that such service could constitute a "career move" (Id.). Consequently, participation in the Explorers resulted in many of the members finding careers in law enforcement or public safety (Id.)

Plaintiffs essentially allege that Defendant failed to investigate or at least enact proper mechanisms to protect against what it knew to be improper conduct by Deputy Stewart. Plaintiffs contend that Stewart was "widely known" by the BCSO and the Explorers program as someone who would often make inappropriate comments and jokes of a sexual nature (doc. 21). In fact, Plaintiffs allege that on one particular occasion, Stewart demonstrated in front of several Explorers how an officer could satisfy himself sexually by taking liberties during the pat-down of a suspect (Id.). Plaintiffs also contend that Stewart was "notorious" for spending an unusual amount of one-on-one time with particular male Explorers, notably Plaintiffs McCroskey and Andrews

3

and other Explorers Jeff Sandlin and Marc Dennett (Id.).

Dan Berter served as the supervisor of the Explorers program from 1998 to 2002, and was responsible for overseeing and scheduling all activities (doc. 21). Berter has acknowledged that a minimal amount of screening was required for evaluating persons who wished to be associate advisors and that special training or instruction was not needed to work in such a capacity (Id.). However, Defendant avers that it conducted an extensive screening process for all persons it employed (doc. 25).

Plaintiffs assert that in 1999 Major Sizemore informed Berter that he needed to report "anything out of the ordinary" regarding Stewart's behavior toward Explorers (doc. 21). After this conversation, Berter then discussed the possibility with associate advisors Jeff Duke and Cliff James that Stewart may be molesting certain Explorers (Id.) Plaintiffs contend that Berter subsequently took no action until the following year (Id.). Berter acknowledges noticing that Stewart had prominently displayed photographs of himself with certain male Explorers, including Plaintiffs, in which his arm was around the Explorers (Id.) Additionally, Plaintiffs claim that Berter knew that Stewart was using a private radio channel to communicate with Explorer Sandlin (Id.)

Plaintiffs also allege that no set procedure for reporting abuse or harassment existed within the hierarchy of the

4

program, or, at the absolute least, Explorer participants knew nothing of such a procedure if it existed (doc. 21). Plaintiffs allege that a mechanism for reporting sexual harassment and abuse was not installed in the program until after Stewart pled guilty to two counts of sexual battery. Plaintiffs assert that the youth members of the Explorer program installed such mechanism, and not its administrators (Id.). In response, Defendant contends that a sexual harassment policy was in place at the BCSO, and the policy even applied to non-employees (doc. 25).

**ANALYSIS**

**I.    Summary Judgment Standard**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will beat the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the

absence of a genuine issue of material fact as to an essential element of the non-movant's case (Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the records must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the

6

burden on the moving party or the court to demonstrate that summary judgment is appropriate.  <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

## II.  DISCUSSION

**A.  Plaintiffs' Substantive Due Process Claim Against the Butler County Sheriffs Department Withstands Summary Judgment**

      **1.  Plaintiffs' Section 1983 Claims Against the Butler County Sheriffs Department Alleging a Custom or Policy of Inaction Regarding Sexual Abuse**

Plaintiffs raise a complaint under 42 U.S.C. § 1983 against the BCSO, claiming that the Defendant had a custom or policy of inaction toward a pattern of sexual abuse and harassment by Deputy Stewart and that such inaction demonstrated a deliberate indifference to Plaintiffs' constitutional rights (doc. 21). Defendant argues that there is no evidence of a custom or policy of inaction and that they were not deliberately indifferent to the rights of Mr. McCroskey and Mr. Andrews because they took proper steps to investigate suspicious behavior by Deputy Stewart regarding Plaintiffs (doc. 25).

For Plaintiffs to prevail on their Section 1983 claim against the BCSO, they must first establish municipal liability. The municipal liability claim must be evaluated using a two-pronged test: (1) whether the plaintiff has asserted the deprivation of a constitutional right in the first place; and (2) whether the BCSO is responsible for the deprivation.  <u>Collins v. City of Harker</u>

7

Heights, 503 U.S. 115, 120 (1992).    Because the Court has
determined that Plaintiffs have asserted a claim for deprivation of
their constitutional right to bodily integrity under the Due
Process Clause, the relevant inquiry here is whether the Defendant,
in its supervisory nature, is responsible for the alleged
violation.    See Doe v. Claiborne County, 103 F.3d 495, 508 (6th
Cir. 1996).

Defendant cannot, in its supervisory nature, be
responsible for the violation under a theory of respondeat
superior.    Id. at 507 (citing Monell v. Dept. of Social Services,
436 U.S. 658, 691 (1978)).    Rather, Plaintiffs must show that the
supervisory Defendants themselves were the wrongdoers.    In this
case, they must show that the toleration of a custom within the
BCSO lead to, caused, or resulted in the deprivation of a
constitutionally protected right.    Id.    (citing Monell at 690-91).

For purposes of Monell liability, a "custom" must be "so
permanent and well settled as to constitute a custom or usage with
the force of law."    Monell, 436 U.S. at 691.    Plaintiffs allege
that the custom at issue here was to fail to act to prevent the
abuse of Plaintiffs at the hands of Deputy Stewart (doc. 21).

Defendant correctly cites to Doe v. Claiborne County,
Tenn., 103 F.3d at 508, in order to evaluate whether the "state-
created danger" doctrine applies.    According to the Sixth Circuit,
a plaintiff alleging a state-created danger due to inaction must

establish:

> (1)    The existence of a clear and persistent
>        pattern of sexual abuse by the [employees
>        of the defendant];
>
> (2)    notice or constructive notice on the part
>        of the [defendant employer];
>
> (3)    the [defendant employer's] tacit approval
>        of the unconstitutional conduct, such
>        that their deliberate indifference can be
>        said to amount to any official policy of
>        inaction;
>
> (4)    that the [defendant employer's] custom
>        was the 'moving force' or direct causal
>        link in the constitutional deprivation.

Id. Defendant takes issue primarily with the third prong of the state-created danger test, claiming that the behavior of the BCSO did not rise to the level of "deliberate indifference" (doc. 25). In contrast to Doe, in which the court determined that the plaintiff had not shown a deliberate indifference to reports of abuse on behalf of the defendant, Plaintiffs here raise a number of genuine issues of fact as to whether the BCSO was deliberately indifferent to the reports of sexual abuse by Stewart.

First, and most importantly, Plaintiffs' claim that the BCSO failed to investigate early suspicions it might have had concerning the behavior of Deputy Stewart certainly raises a genuine issue of material fact. Deputy Berter knew of suspicious behavior by Stewart as early as 1999 and no concrete action was taken against Stewart until nearly a year later (doc. 21). In fact, the depositions of some Explorers state that Berter met with

9

a group of them in 1999 and told them to "keep an eye on" Stewart
(Id.)    Many officers testified that they knew of Stewart's
potentially bizarre sexual tastes and of his propensity for lewd
and inappropriate behavior (Id.).   Berter acknowledges that Major
Sizemore had raised concerns with him that Stewart was spending an
inordinate amount of time with certain male Explorers, further
evidenced by pictures on Stewart's desk with the Explorers in
question  (Id.).    Defendants also knew that Stewart was
communicating with particular Explorers over a private radio
channel, and that Stewart engaged in lewd behavior in the presence
of youth (Id.).  Defendant refuses to acknowledge that this notice
presents a problem to their motion opposing summary judgment and
insist that the BCSO did everything in its power to remedy the
situation once they knew of the abuse (doc. 25).  In contrast, the
Court finds that a reasonable jury could find that the BCSO did too
little, much too late in the face of evidence that something was
awry.

        Second, a reasonable juror could find that the BCSO
failed to implement, or at best failed to inform the Explorers of,
a sufficient sexual harassment reporting system within the BCSO
(doc. 21 & 25).  A lack of such communication very well may have
emboldened Deputy Stewart in his advances as much as it discouraged
Plaintiffs from coming forward.  Expecting teenage (and even
younger) boys to take their own initiative to report such abuses is

10

not realistic.

Third, Plaintiffs point to the failure of the BCSO "to screen, select, train, or monitor" those who were advisors or mentors in the Explorer program (doc. 21).  Defendant once again points out that such a failure to train must also rise to the level of deliberate indifference.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (doc. 21).  It also claims that Stewart had been extensively trained and screened in his role as a deputy with the BCSO (Id.).  However, such claim rings hollow as the screening obviously did not keep Stewart from ultimately accessing his victims.  A jury could reasonably take the view that employees who work with impressionable children should be subject to screening that goes beyond that conducted on a regular basis for all employees.   BCSO's failure to further train or screen employees working with vulnerable children could be interpreted by a reasonable juror as evidence of "deliberate indifference" to the plight of Plaintiffs.  Similarly, the implication by Defendant that the holding of Collins v. City of Harker Heights, Tex., 501 U.S. 115 (1992), precludes the BCSO from liability for failing to train employees because the Plaintiffs "voluntarily" participated in the Explorer program is not persuasive - primarily because this case involves children and not at-will employees.

**2.   Existence of a "Special Relationship" Between Plaintiffs and the BCSO**

11

Plaintiffs also base their contention that the BCSO had an affirmative duty to protect Andrews and McCroskey on the existence of a so-called "special relationship" between the BCSO and the Plaintiffs (doc. 21).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects individuals from state deprivations of life, liberty, or property without due process of the law. In most circumstances, "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Deshaney v. Winnebago County Dept. Of Soc. Servs., 489 U.S. 189, 196 (1989). An exception to the general rule exists where, 1) a "special relationship" exists between the state and the victim, and 2) the state creates the danger to the victim (which, as noted above, the Court finds a jury could conclude based on BCSO's inaction). Sperle v. Mich. Dep't of Corrections, 297 F.3d 483, 491 (6th Cir. 2002).

An affirmative duty to protect an individual arises when a "special relationship" exists between the state and the individual. DeShaney, 489 U.S. at 200 (1989). This "special relationship" is created by the state placing "limitations" on the victim's "freedom to act on his own behalf." Id. This limitation on the freedom of the victim need not necessarily be custodial in nature. See United States v. Lanier, 520 U.S. 259 at fn. 7 (1997).

Plaintiffs claim that a special relationship between the

12

BCSO and the Plaintiffs existed, and thus that an affirmative duty to protect the Plaintiffs by the BCSO existed as well (doc. 21). Plaintiffs point towards several instances in which their freedom was significantly limited by Stewart acting under the color of law. Stewart allegedly brandished a gun before he sexually assaulted McCroskey in a tent during safety camp (doc. 21). Both Andrews and McCroskey were molested by Stewart as passengers in his EMS cruiser during Explorer ride-alongs (Id.). Each of these instances present a factual question as to whether the BCSO, through Deputy Stewart, sufficiently restrained the freedom of the victims as to constitute a "special relationship" between Plaintiff and Defendant.

Defendant calls attention to several cases in which the court did not find the existence of a special relationship when the state actor was a school or school district. See Sargi v. Kent City Board of Education, 70 F.3d 907 (6th Cir. 1995); Oldham v. Cincinnati Pub. Schools, 118 F. Supp.2d 867 (S.D. Ohio 2000); Doe v. Claiborne County, Tenn., 103 F.3d 495 (6th Cir. 1996); Dorothy J. v. Little Rock School Dist., 794 F.Supp. 1405 (8th Cir. 1993)(doc. 25). However, the victims in each of these cases were abused in the context of a school, a setting different from that currently facing the Court. Indeed, courts have held that the compulsory attendance policies of schools and in loco parentis statutes of some states do not "render a child's guardians unable to care for the child's basic needs." Dorothy J. at 732. In

13

contrast, the limitations on personal freedom are of a different nature regarding the Explorer program.  Stewart molested and harassed the Plaintiffs while serving in his capacity as an authority figure in the Explorers program.  He was not a "third party" for whom the BCSO had no responsibility to monitor or control.  He additionally used his power as an advisor in the program to isolate and limit the freedom of the Plaintiffs during his numerous private ride-alongs in his cruiser and in his tent at Safety Camp when he allegedly made it known that he had a gun (doc. 21).

In addition, the violations of victims' due process rights in Oldham and Dorothy J. were perpetrated by private actors under the supervision of the defendants, whereas here Deputy Stewart molested the Plaintiffs in his official capacity for the BCSO.  Depositions by several Explorers indicate that Stewart used his "role-model status" and an implied threat of retaliation regarding future employment in law enforcement to constrain Plaintiffs (doc. 21).

**B.  Plaintiffs' State Claims Based on Sexual Harassment and Assault and Battery Withstand Summary Judgment**

**1.  The BCSO is not Protected by the Doctrine of Sovereign Immunity**

As for the state law claims at issue in this case, Defendants BCSO in their official capacity invoke sovereign immunity under Ohio Rev. Code § 2744 (doc. 18 & 25).  The Court

14

need not reach the parties' respective arguments for and against sovereign immunity since this Court has determined that the Ohio Supreme Court would find the state's sovereign immunity statute unconstitutional with respect to local governments as suggested in Butler v. Jordan, 92 Ohio St.3d 354 (2001).[1]  (Kammeyer v. City of Sharonville, No. 1:01-CV-00649, 2003 U.S. Dist. LEXIS 25072 *21 (S.D. Ohio, Dec 16, 2003)).

Having reviewed this matter, the Court concludes that the invocation of sovereign immunity by the BCSO violates the Plaintiffs' rights to trial by jury and to remedy under the Ohio Constitution (Butler, 750 N.E. 2d 568-72).  The Court finds it unlikely that the Ohio Constitution would permit municipalities to cloak themselves against liability for contributing to sexual harassment and assault and battery against minors in the care of their employees.  As such, the Court will not dismiss Plaintiffs'

---

[1]In Butler, the Ohio Supreme Court provided a detailed recounting of the history of the doctrine of sovereign immunity, concluding that the concept of sovereign immunity for political subdivisions is "faulty," "not soundly based in legal history or the law" and "is also faulty when the Ohio Constitution…is examined."  750 N.E.2d 554, 568.  The plurality opinion did not strike down statutory sovereign immunity as unconstitutional under the Ohio Constitution because it found that the issue was not before it.  Id. at 558, 572.  However, the Ohio high court found that the application of Section 2744 would violate the Butler plaintiff's right to trial by jury guaranteed by Section 5, Article I of the Ohio Constitution, and possibly her right to remedy under Section 16, Article I.  Id. at 568-572.  Furthermore, the Butler Court clearly found that sovereign immunity does not attach to political subdivisions, as they, unlike the state, are not sovereign.  Id. at 570-71.

claims for sexual harassment and assault and battery based on Ohio
Revised Code § 2744.

### 2. Plaintiffs' State Claim of Sexual Harassment Withstands Summary Judgement

Plaintiffs claim that the BCSO should be held liable for
the sexual harassment inflicted on Plaintiffs by Deputy Stewart
through the doctrine of <u>respondeat</u> <u>superior</u> (doc. 21). Plaintiffs
base their theory of liability on the assertion that Stewart was
acting in the scope of his employment when he harassed Plaintiffs
and that the BCSO knew or should have known of Stewart's
propensities for abuse and had a responsibility to do something
about it (<u>Id</u>.). Defendant responds by claiming that the Explorers
were not "employees" and thus not protected by applicable sexual
harassment laws, and furthermore that the BCSO did not know, nor
should it have known, about the abuse perpetrated by Stewart and
thus had no legal responsibility to act to prevent it (doc. 25).

Under Ohio law, an employer can be held liable for sexual
harassment under two circumstances: 1) when the harasser acts
within the scope of his employment, and 2) when the employer knew
or should have known about the harasser's potential to cause harm
and failed to take preventative measures. See <u>Kerans v. Porter</u>
<u>Paint Co.</u>, 575 N.E.2d 428, 432 (N.D. Ohio 1991). The Northern
District of Ohio, in commenting on the <u>Kerans</u> decision,
distinguished between information that would legally put the
employer on notice that sexual harassment may be occurring on its

16

watch and "general unreported internal sentiment and second-hand, indirect external reports." Garcia v. ANR Freight System, Inc., 942 F.Supp. 351 (N.D. Ohio 1996) at 358.

The Court finds that there is adequate evidence presented by the Plaintiffs to support the contention that a reasonable juror could find that the BCSO had enough information at its disposal that it either knew or should have known that Stewart was harassing Explorers.  Again, it appears that the BCSO did too little, too late, after becoming aware that they were presiding over a potentially abusive situation.  Deputy Berter has acknowledged that he had suspicions as early as 1999 that Stewart may have had inappropriate relationships with several Explorers (Berter Depo., Paproski Depo., McCroskey Depo.)  Before any action had been taken to prevent abuse, Berter had told other officers and some Explorers to "keep an eye on" Stewart regarding his relationships with certain Explorers (Id.)  Other pieces of evidence, such as Berter's knowledge that Stewart was spending an abnormal amount of time with certain Explorers, that Stewart had prominently displayed pictures of himself with those same Explorers, that Stewart frequently took these boys on "ride-alongs," and that Stewart communicated with some Explorers on private radio channels all support the position that Defendant either knew or should have known that something abusive was occurring (D. Berter Depo., Farthing Depo, Duke Depo., Paproski Depo., Ginter Depo., McCroskey Depo.).  The BCSO could not

17

have reasonably expected juvenile victims to come forward with allegations of sexual abuse on their own. Likewise, the fact that the Explorers were given the opportunity to come forward to report any abuse does not absolve the BCSO of liability. Thus, a reasonable juror could find that taken together, the facts show that the BCSO should have known about Stewart's potential to cause harm and subsequently failed to take action. A juror could reasonably view Stewart's lewd comments and behavior, characterized by Defendants as merely jocular, as offensive and inappropriate in the presence of youth. A juror could further find that Berter was on notice that something was awry, based on his own comments to Explorers in 1999, and based on Stewart's unusual interest in particular male Explorers, including Plaintiffs.

The Court does not find well-taken Defendants' assertion that the Explorers were not "employees" for the purposes of Ohio sexual harassment laws. It is no stretch to characterize the program as a "training program", which is specifically enumerated in Ohio Revised Code § 4112.02(D) as an activity which qualifies as "employment" for purposes of the statute. This Court finds persuasive Plaintiffs' argument that a key factor in determining the "employee" status of an individual is the economic benefit, whether tangible or in the form of future opportunities, that they can hope to receive as a result of their participation. <u>See</u>

<u>Armbruster v. Quinn</u>, 711 F.2d 1332 (6th Cir. 1983).[2]    The Plaintiffs took part in the Explorers program for, among other reasons, an opportunity for future employment in law enforcement (doc. 21).

The Court also finds that Deputy Stewart was acting within the scope of his employment when he harassed Plaintiffs. There is ample evidence to create a genuine issue of material fact as to whether Stewart used his official capacity as an advisor in the Explorers program as well as his official capacity as a Deputy to control and sexually exploit plaintiffs.  The depositions of Plaintiffs McCroskey and Andrews support the contention that Stewart committed the abuse in situations sponsored by the Explorers program (doc. 21).  Those same depositions also support the contention that Stewart used his official capacity as a controlling element in committing the abuse (doc. 21).

### 3. Assault and Battery

Since Defendant's only defense against the state law claims of assault and battery is sovereign immunity, the Court has determined that a reasonable juror could find the BCSO liable for the intentional actions of Deputy Stewart.  The Defendant has acknowledged that Stewart repeatedly molested and harassed

---

[2]Federal case law interpreting Title VII has been construed to apply to cases involving Section 4112.02.  <u>See</u> <u>Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.</u>, 61 Ohio St. 3d 607 at 609-10 (1991).

Plaintiffs.  Therefore, Plaintiffs have viable assault and battery claims under Ohio law.

**CONCLUSION**

Plaintiffs' constitutional and state law claims survive Defendant's motion for summary judgment.  Plaintiffs have adequately shown that a reasonable juror could find that the Defendant violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Plaintiffs have shown that a reasonable juror could find that Defendant had a custom or policy of inaction regarding sexual abuse and that a relationship between it and Plaintiffs was such that it had an affirmative duty to protect Plaintiffs from harm.  For these reasons, Plaintiffs' constitutional claims survive summary judgment.

As for the remaining state claims at issue, Defendant BCSO is not entitled to sovereign immunity, because such immunity is in direct conflict with Plaintiffs' right to a trial by jury and right to remedy under the Ohio Constitution.  This Court additionally finds that a reasonable jury could find Defendant liable for the sexual harassment of Plaintiffs since Stewart acted within the scope of his employment while harassing Plaintiffs and since the BCSO should have known of the danger that Stewart posed to the Explorers in general and to Plaintiffs in particular.

Finally, Plaintiffs establish a _prima_ _facie_ case for assault and battery under Ohio law.

Accordingly, the Court DENIES the Motion for Summary Judgment of Defendant Butler County Sheriff's Office (doc. 18). The Court further SETS the Final Pretrial Conference for 3:00 p.m. on June 9, 2004, the Charging Conference for 3:00 p.m. on July 8, 2004, the Summary Jury Trial to commence on July 20, 2004, and the five-day jury trial to commence August 17, 2004, on an on-deck basis.

SO ORDERED.


Date: April 13, 2004        /s/ S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge